YOUNG PLUMBING AND HEATING COMPANY, Mechanical Contractors, Inc., and Verne F. Clute, Appellees,

v.

IOWA NATURAL RESOURCES COUNCIL, Appellant.

No. 61876.

Supreme Court of Iowa.

March 21, 1979.

Thomas J. Miller, Atty. Gen., Michael P. Valde, Asst. Atty. Gen., for appellant.

Wallace B. Reed, Cedar Falls, for appellees.

Considered by REYNOLDSON, C. J., and REES, McCORMICK, McGIVERIN and LARSON, JJ.

REES, Justice.

This appeal by the Iowa Natural Resources Council (hereinafter Council) is from the order and ruling of the district court overturning the Council's denial of the application of the petitioners Young Plumbing and Heating, Mechanical Contractors, Inc., and Verne F. Clute (hereinafter petitioners) for a permit to construct a building on a flood plain. We reverse the ruling of the district court and remand for further proceedings.

There is no factual dispute in this appeal. Some time prior to 1968 the original owners of the land in question obtained a building permit from the city of Cedar Falls and commenced construction of a condominium. The owners became bankrupt shortly after the foundation of the building had been constructed. Petitioners succeeded to the ownership of the building through the foreclosure of their mechanic's liens for a sum in excess of $200,000, the building being set over to them in the bankruptcy proceedings.

The partially completed structure is located on the northerly bank of Dry Run Creek; the southerly side of the creek opposite the structure being the sites of private residences. Portions of the lots on both sides of the creek slope to the waterway.

Nothing was done to the structure for approximately three years. In 1971 residents opposite the structure on the southerly side of the creek complained to the Council, and the Council investigated the situation, obtaining surveys and cross sections of the creek area and data regarding past floods.

In January of 1973 petitioners' engineers submitted plans and applications to the Council for excavation and filling on the site. Council advised petitioners it had determined a 200-foot floodway, centered in the channel of Dry Run Creek, to be necessary for the transmission of flood waters. The Council further advised petitioners that the existing structure and backfill was partially within 100 feet of the creek's centerline and required it to be removed to a point beyond the 100-foot line to ensure that flood elevations would not be appreciably increased.

In February 1973 the petitioners' engineers proposed improving the channel to increase the efficiency of the flow, allegedly reducing the flood elevation to allow use of the building. The Council's staff studied alternatives for such improvements, but in August, 1973, the Council reaffirmed its position regarding the width of the floodway, minimum protection level, and the removal of all construction within 100 feet of the centerline of the creek.

In October of 1974 residents of the area requested the city to remove the building because of its dilapidated condition. The city investigated the situation and gave the petitioners until May 16, 1975 to meet the Council's requirements for the area.

On May 1, 1975 the petitioners submitted plans to the Council proposing to widen the channel from eight feet to 25 feet and to construct uniform 2:1 side slopes on the new channel. The Council set a public hearing on the application for June 23, 1975, and notified all interested parties. Hearing was held and testimony, including studies and other evidence, was submitted to the Council.

On July 10, 1975 the Council filed a detailed report, including the following findings: a 200-foot wide floodway centered in the stream is necessary to provide for the adequate transmission of flood water in a 100-year flood [1] and that this fact results in an encroachment boundary limit of 100 feet on either side of the centerline of the creek; the existing building and fill is within the encroachment limit and without any channel improvements would cause a 0.3 foot increase in the level of a regulatory flood [2]; with the proposed channel improvements, if equal encroachment on the opposite bank were to be allowed there would be a 2.7 foot increase in the flood level, which is 1.7 feet above the permissible limits of the Council's requirements; although the water entry level for the building would be above the actual water surface elevation of a regulatory flood it would be 0.4 feet below the minimum flood protection level; that even with the proposed channel improvements the building would be inundated by water flowing on its landward side and would be cut off from easy access. On the basis of these findings the Council concluded that the revised project would adversely affect the efficiency of or unduly restrict the capacity of the floodway and disapproved the petitioners' application.

On July 21, 1975, the petitioners submitted an application for rehearing to the Council and requested that they be allowed to present evidence not submitted at the original hearing and to amend their plan and proposal. The Council granted petitioners' request and set a public hearing for August 28, 1975, again giving notice to all interested parties.

At the August 28 hearing, revised plans were submitted providing for the construction of enbankments at both the upstream and downstream extremities of the structure so as to prevent a regulatory flood from cutting off access to the building. Petitioners also proposed to floodproof the building to the level of minimum protection and make other changes to better protect the structure from hydrostatic pressure. Petitioners also volunteered to post a $5,000 bond to ensure maintenance of the enbankments in accord with the revised plans. Petitioners' engineers also presented studies showing that the proposed enbankments around the building would not raise the water surface profile above the elevation of the minimum protection level.

On September 5, 1975, the Council filed its findings and conclusions regarding the revised application. It found that with the proposed enbankments and modifications, the building would withstand the hydrostatic pressure of a regulatory flood. It further found that studies made by its staff did not substantially disagree with the studies of petitioners' engineers that the project as revised would not raise the flood level higher than the minimum protection level. But the Council also concluded that the project would cause some problem to the landowners on the opposite side by increasing the level of the water surface profile and shifting all overbank flows to the south side. The Council specifically found its policy of "equal and opposite encroachment", as in the proposed administrative rules, to be applicable to the facts of this case and that the revised proposal would not allow an equivalent encroachment on the opposite bank without exceeding the established protection levels. The Council further expressed doubt as to whether the proposed enbankment modifications could be properly maintained. On the basis of such findings and conclusions the Council disapproved the revised proposal.

1. "100-year flood" denotes a flood having a one percent chance of occurring in any one year.

2. "Regulatory flood" is another term for a "100-year flood".

Petitioners then filed a petition for review of the administrative action of the Council in the District Court of Black Hawk County. In their petition for review, they alleged that the application of the proposed rule by the Council in the permit proceedings was violative of § 17A.3(2), The Code 1975, which provides that no agency rule is valid or effective against any party nor shall it be invoked by the agency for any purpose until the adoption requirements have been met. Petitioners also alleged that the denial of their application for permit was unreasonable and thus in contravention of § 17A.19(8)(g). Petitioners then requested the Council be ordered to grant the permit as requested.

The district court disposed of the matter by sustaining petitioners' motion for summary judgment, concluding the summary judgment motion to be an appropriate means of disposition, that § 17A.3(2) barred application of the proposed rule to the matter before it, and that without support of the rule the agency action was unreasonable in light of the petitioners' investment and the availability of damages if the opposite landowners were damaged by the resulting encroachment. The district court thereupon granted the relief requested by the petitioners.

From such ruling of the district court, the Council made timely appeal.

The following issues are presented for review:

(1) Is a motion for summary judgment applicable in a proceeding for judicial review under § 17A.19, The Code?

(2) Did the district court err in concluding that § 17A.3(2) barred consideration of the proposed rule or its content by the Council in petitioners' contested case proceeding?

(3) Did the district court err in finding the Iowa Natural Resources Council to have acted unreasonably in denying petitioners' application for a permit?

■ I. The district court found the summary judgment proceeding to be an appropriate means for reaching the merits of the petition for judicial review of the administrative action due to the similarity of the petition to a request for declaratory relief. The Council resisted the petitioners' motion for summary judgment on the grounds that the district court was sitting in an appellate, rather than a trial, capacity and that the affidavit procedure delineated in rule 237, Iowa Rules of Civil Procedure, is inappropriate when the court reviewing a contested case proceeding is limited by § 17A.19(7) to the record before the agency unless application is made to hear additional evidence. We find merit in the Council's arguments and hold that summary judgment is inappropriate in a judicial proceeding to review a contested case pursuant to § 17A.19.

■ The role of the district court in reviewing administrative action under the Iowa Administrative Procedure Act (IAPA) is of an appellate nature. *Iowa Public Service Company v. Iowa State Commerce Commission*, 263 N.W.2d 766, 768 (Iowa 1978). The appellate character of review, when combined with potential inconsistencies between the summary judgment process outlined in the rules of civil procedure and provisions outlining the limited scope of judicial review under chapter 17A, such as noted by the Council, mandate the conclusion that summary judgment is an inappropriate motion in a chapter 17A proceeding to review a contested case. Courts of other states which have enacted statutes similar to Iowa's, all derivative of the Model Administrative Procedure Act, have reached a similar conclusion regarding motions for summary judgment. *Wisconsin's Environmental Decade v. Public Service Commission*, 79 Wis.2d 161, 169–170, 255 N.W.2d 917, 923 (1978); *Markham v. Swails*, 29 N.C.App. 205, 208, 223 S.E.2d 920, 922 (1976); *Howell v. Harden*, 129 Ga.App. 200, 201, 198 S.E.2d 890, 891 (1973).

We therefore conclude the district court erred in holding a motion for summary judgment appropriate in reviewing a contested case. This, however, does not dispose of the matter before us. The district court based its conclusions on an examina-

tion of the record, as is dictated by § 17A.19(7) regarding contested cases, and reached conclusions facially consistent with the statutory grounds of § 17A.19(8). We therefore address the remaining issues.

II. The district court found that at the time of the hearing on petitioners' revised petition before the Council, the proposed rule in question had not yet been promulgated in the manner required by the IAPA, and that § 17A.3(2) provides that no agency rule is valid or effective against any party for any purpose until the adoption requirements have been met. The district court further concluded that the Council invoked the proposed rule concerning equal and opposite encroachment in denying petitioners' revised application and that, therefore, the Council's action was invalid as a matter of law.

■ The conclusion of the court would be correct were it not that among the exceptions to the statute's definition of a "rule" is the "determination, decision, or order in a contested case", § 17A.2(7)(d). The application of a principle contained in a proposed rule by the Council to a particular factual situation, so long as the principle is relevant to the facts of the case and thus an aid in its resolution, is not barred by § 17A.3(2) because it is not being applied as a rule. As noted by Professor Bonfield in discussing the § 17A.2(7)(d) exclusion: "The point is that agencies cannot avoid using rulemaking procedures by issuing statements of *general applicability and future effect* in contested case proceedings." Bonfield, *The Iowa Administrative Procedure Act: Background, Construction, Applicability, Public Access to Agency Law, The Rulemaking Process.* 60 Iowa Law Review 731, 837 (1975). *See generally* Bonfield, *supra* at 836–838.

The Council did not purport to establish a rule of future effect in this case, but applied a relevant consideration, the effect of proposed modifications of the flood plain on property adjoining the flood plain, a factor consideration of which is mandated by § 455A.18, in discharging the authority delegated it by the legislature in chapter 455A,

The Code 1975. Additionally, although the distinction is one of form, we note that the Council did not attempt to apply the proposed rule as having the force of law, but based application of its content as appropriate to the particular situation before the Council at that time. It was thus proceeding in the adjudicative manner befitting a contested case rather than in a legislative manner characteristic of rulemaking. *Patagonia Corporation v. Board of Governors and Federal Reserve System*, 517 F.2d 803, 816 (9th Cir. 1975).

■ Absent statutory guidance, the choice of whether to develop policy by rule, contested case, or both, lies "[within] the informed discretion of the administrative agency", *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995, 2002 (1947). Either means may be used so long as the statutory procedure is complied with. *See* Bonfield, *supra*, at 924–927. Of course, a rule has the binding effect of law, whereas the decision of a contested case is but of precedential value.

■ There is no indication in the record that the statutory procedure for contested cases was not complied with or that the Council attempted to promulgate a rule through the proceeding. We hold that a consideration relevant to the merits of an issue in a contested case proceeding before an administrative body is not precluded from being a basis for the agency decision because it is also the subject matter of a proposed rule, so long as it is applied in an adjudicative manner dependent upon and limited to a particular factual situation, and not simply as a valid rule. The existence of alternative means for the formulation of agency policy indicates that the procedures facilitating such means must be strictly adhered to. If an agency relies upon a rule as such to support its action, the rule must have been promulgated in accord with the procedure in effect at that time. Until such time as the rule becomes effective, its subject matter is not precluded from being considered in a contested case when relevant and being applied to only the facts at hand. Thus we do not mean to endorse the

result reached by the United States Supreme Court in *NLRB v. Wyman-Gordon*, 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969). An adjudication under the IAPA can result only by following the procedures outlined therein, not by a proceeding in which a "rule", not promulgated in accord with rulemaking procedure, is claimed to be binding and the alleged adjudication involving the "rule" arose from proceedings to enforce the "rule".

 Thus where, as here, the proposed rule is not applied as a matter of law, but is found to be relevant to the factual situation of the contested case and is applied only to those facts as a basis for decision, § 17A.3(2) does not come into play. Even though there was a proposed rule stating the equal and opposite encroachment standard, the resulting burden on nearby landowners which would be caused by flood plain modification is a consideration relevant to whether the application for modification and construction should be granted. Failure to consider the full effect of the proposed flood plain modification could indeed be interpreted to be an abuse of the authority delegated to the Iowa National Resources Council.[3] That a rule is being formulated regarding encroachment resulting from flood plain modification should not foreclose Council consideration of the encroachment resulting in a particular instance. Such was the purpose of excepting contested case determinations from the definition of rule under the Act. When relevant, the content of a proposed rule may provide a basis for decision in a contested case without violating the language of § 17A.3(2). The essential feature is that the content of the proposed rule is being applied to the particular facts as a relevant factor, and not as a valid rule with the force and effect of law. The contested case is thus not being used to set forth rules of general applicability and future effect.

III. The district court concluded that even if the policy of equal and opposite encroachment embodied in the proposed rule could be applied to the petitioners' application before the Council, the action of the Council in denying petitioners' application for a permit was unreasonable and in contravention of § 17A.19(8)(g). The court therefore ordered the issuance of a permit on petitioners' amended proposed plans. For the reasons set out below, we reverse the rulings of the district court.

It is not disputed that the district court was reviewing a contested case proceeding of an administrative agency. The standard for review of contested case proceedings has been previously established by this court:

> Our review of a contested case under § 17A.20 is not de novo. Our task is to review the record in the manner specified in § 17A.19(7) and make anew the judicial determinations specified in § 17A.19(8). Our review is limited, as the district court's should have been, to the record made before the hearing officer.

*Community Action Research Group v. Iowa State Commerce Commission* (Iowa 1979); *Hoffman v. Iowa Department of Transportation*, 257 N.W.2d 22, 25 (Iowa 1977). Section 17A.19(8)(f) provides that agency action in a contested case may be reversed when it is "unsupported by substantial evidence in the record made before the agency when that record is viewed as a whole." We noted in *City of Davenport v. Public Employment Relations Board*, 264 N.W.2d 307, 311 (Iowa 1978):

> Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion. *Grant v. Fritz*, [201 N.W.2d 188,] 197 (Iowa 1972). As provided in Code § 17A.19(8)(f) the entire record must be considered in determining whether the challenged finding has sufficient support. Nonetheless, the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.

---

3. The extent of this authority and its relationship to the facts of this case will be discussed in resolving the next issue.

*Reisner v. Board of Trustees of Fire Retirement System*, 203 N.W.2d 812, 814 (Iowa 1973).

Thus the question is whether the action of the Council is supported by substantial evidence. We therefore address that question.

Section 455A.18, The Code, establishes the jurisdiction of the Natural Resources Council over proposed construction and/or excavation in the flood plain of all rivers and streams in the state. The statute mandates consideration of the effect of the proposal on flooding, flood control, and adjacent lands and property. The Council denied petitioners' application for a permit on grounds that the proposed modifications of the flood plain would increase the level of flood waters with the burden of the increase falling on the property owners across the creek from the petitioners' land. The proposed modifications would also decrease the potential for development of the land abutting the creek on the opposite bank since a similar structure and modifications could not be undertaken on the opposite bank without greatly increasing the potential for flood damage. Several of the landowners involved expressed concern about the limitations on the use of their land which would result from petitioners' modification of the flood plain. The Council also expressed doubts about the ability of petitioners to maintain the proposed modifications. Citing concern about the increased burden which the proposed plan would place upon the adjacent lands and the nature of the precedent which would be established,[4] the Council denied petitioners a permit.

 This explanation for the decision of the Council would appear to provide a rational basis for the resolution of the contested case, absent evidence in the record which would substantially mitigate its force. The conclusion of the Council is further supported by the deference with which a reviewing court should approach agency action due to the Council's particular exper-

tise. Still a court reviewing agency action must scrutinize the whole record to evaluate any alleged statutory grounds for invalidation. *See Ethyl Corporation v. Environmental Protection Agency*, 176 U.S.App. D.C. 373, 405–410, 541 F.2d 1, 33–38 (1976); Oakes, *The Judicial Role in Environmental Law*, 52 New York University Law Review 498 (1977).

The district court, while acknowledging the general appropriateness of the equal and opposite encroachment concept, found the facts that the building in question was already in existence and that the encroachment on the other property was merely "anticipatory" to result in a conclusion that the denial of the application was unreasonable. The district court noted that in the event actual damage was suffered by adjacent property owners due to the proposed modifications, the adjacent property owners would have a cause of action. We do not find such grounds to sufficiently mitigate the rationale of the Council as to make the decision of the Council unreasonable.

One function of the Council is to facilitate flood control through planning. *See* § 455A.17. Part of this function involves projecting the occurrence of floods. In this sense the actions of the Council are always anticipatory as to floods, the effect of channel modifications on adjacent lands, and future development on adjacent lands. Regardless of whether like construction or development were to be undertaken on the opposite bank, the proposed construction and the accompanying channel modifications will reduce the number of potential uses and the corresponding value of the adjacent land due to increased susceptibility to flooding. The effect on adjacent lands being a consideration mandated by the legislature, and planning being a delegated function of the Council, the anticipatory nature of the Council's findings does not work against their reasonableness.

---

4. The Council, in accord with § 455A.17, is to establish and enforce a statewide plan regarding the control, use and protection of water resources. Thus in passing on the merits of

any contested case, the Council would be concerned with the precedential value of its decision and the manner in which it fits into the comprehensive plan.

That the application involves an existing structure and a substantial investment favors allowance of the permit, but does not call for its maintenance at any cost in terms of flood control. The availability of damages is not listed as a consideration under § 455A.18 and it is doubtful whether it should be since the Council is to control or minimize flood damage. The imbalance of the burden of a potential flood resulting from channel modifications is a basis for decision with precedent in this court. In *Bellville v. Porter*, 256 Iowa 1119, 1128, 130 N.W.2d 426, 431 (1964), we said:

> Here all plaintiffs have done is to raise the south dike of the Bellville Ditch. This they cannot do to the detriment of other riparian owners. (Citations). Plaintiffs should be ordered to lower the south dike to same level as the north dike to Bellville Ditch.

While the economic loss is unfortunate,[5] we cannot say that there is not substantial evidence in the record to support the Council, there being a rational basis for their decision. Finding no violation of the applicable standard of review, we must reverse the trial court and allow the decision of the Council to stand.

IV. In summation, we hold: (1) motion for summary judgment is not a proper means by which to dispose of a petition for judicial review involving a contested case; (2) the content of a relevant proposed rule may be a basis for resolution of a contested case before an administrative agency so long as it is treated as such and not as a valid rule having the force of law; and (3) the decision of the Iowa Natural Resources Council in this case is supported by substantial evidence in the record as a whole and is thus not unreasonable.

This case is, therefore, reversed and remanded.

REVERSED AND REMANDED.

5. Although not the fault of the petitioners, we note that the proper time for application is prior to the initiation of construction, a time when any loss resulting from a denial of a permit is minimized.