Rebecca FEARS, Petitioner-Appellee,

v.

IOWA DEPARTMENT OF HUMAN SERVICES, Respondent-Appellant.

No. 84–1671.

Court of Appeals of Iowa.

Dec. 18, 1985.

Thomas J. Miller, Atty. Gen., and Stephen C. Robinson, Asst. Atty. Gen., for respondent-appellant.

Helen L. Stirling, Des Moines, for petitioner-appellee.

Heard by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

HAYDEN, Judge.

Respondent agency appeals the judicial review decision reversing a denial of benefits, asserting that reliance upon a provider's manual was not improper. We reverse and reinstate the agency determination.

Rebecca Fears, a Medicaid recipient, consulted an orthodontist concerning dental problems and was diagnosed as suffering from a malocclusion causing her lower jaw to come out of joint. Her request for payment of corrective treatment was denied following a hearing at which she presented evidence concerning the severity of her condition. The Department of Human Services found that, under a relevant administrative rule, the condition was not a "most handicapping malocclusion."

In reaching this decision, the agency quoted the following language from a provider's manual furnished to dentists participating in the Medicaid program:

8. Procedures which are not covered Medicaid dental program benefits:

a. Full mouth reconstruction procedures.

b. Cosmetic procedures and restorations solely for the improvement of esthetics.

c. Procedures, appliances or restorations (other than those for replacement of structure loss from caries) that are necessary to alter, restore, or maintain occlusion are NOT COVERED BENEFITS. These include:

(1) Increasing vertical dimension

(2) Replacing or stabilizing tooth structure loss by attrition

(3) Realignment of teeth

(4) Periodontal splinting

(5) Gnathologic recordings

(6) Equilibration

(7) Surgical treatment of disturbances of temporomandibular joint

(8) Services for the surgical treatment of prognathism or retrognathism

d. Treatment of incipient or non-active caries as demonstrated radiographically.

On judicial review, the district court reversed the agency decision on the ground that the provider's manual was not a validly promulgated rule and that reliance on it was therefore improper. The agency has appealed, claiming that this determination was in error.

Our review of this matter is limited to a determination of whether the district court made errors of law when it reviewed the

agency action under 17A.19. *Woods v. Iowa Department of Job Service,* 315 N.W.2d 838, 840 (Iowa Ct.App.1981). In order to make that determination we apply the standards of section 17A.19(8) to the agency decision to determine whether this court's conclusions are the same as those of the district court. *Peoples Memorial Hospital v. Iowa Civil Rights Commission,* 322 N.W.2d 87, 91 (Iowa 1982). We are bound by the agency's findings of fact if they are supported by substantial evidence. *New Homestead v. Iowa Department of Job Service,* 322 N.W.2d 269, 270 (Iowa 1982). However, neither we nor the district court is bound by the agency's legal conclusions. *Green v. Iowa Department of Job Service,* 299 N.W.2d 651, 655 (Iowa 1980).

The Iowa Administrative Procedure Act delineates certain rule making procedures to be followed by agencies. Iowa Code § 17A.4 (1985). These procedures must be followed in order for a rule to have the force and effect of law. No claim is made by the Department that the quoted section of the provider's manual is a valid agency rule. Rather, it is argued that pursuant to the statute it was unnecessary to follow rulemaking procedures. Our analysis leads us to a contrary conclusion.

Iowa Code section 17A.2(7) defines "rule" as "... each agency statement of general applicability that implements, interprets, or prescribes law or policy, or that describes the organization, procedure or practice requirements of any agency." The term includes the amendment or repeal of an existing rule.

■ Initially, we agree with the district court's conclusion that the manual falls within the purview of this definition. The manual interprets the Department's rules and sets forth what medical procedures would be covered by Medicaid. Thus, it is properly considered a rule. The remaining question is whether the manual fits within one of the exceptions set forth in 17A.2(7)(a)–(k). If so, it would be unnecessary for the department to follow rulemaking procedures. Our review of the listed exceptions reveal two which would be potentially applicable:

a. A statement concerning only the internal management of an agency and which does not substantially affect the legal rights of, or procedures available to, the public or any segment thereof.

\* \* \* \* \* \*

c. An intergovernmental, interagency, or intra-agency memorandum, directive, manual or other communication which does not substantially affect the legal rights of, or procedures available to, the public or any segment thereof.

Notably, both provisions contain a caveat. If the final product relied on by the agency substantially affects the legal rights of the public, it will not be excepted from the rulemaking requirements. As indicated by the supreme court, "this is so whether that final product defining law or policy of general applicability is denominated a "memorandum, directive, manual or any other communication." *Anderson v. Iowa Department of Human Services,* 368 N.W.2d 104, 108 (Iowa 1985) (quoting Bonfield, *Administrative Procedure Act,* 60 Iowa L.Rev. 731, 835 (1975)).

■ In the present case, the manual was used to determine eligibility for medicaid benefits. Reliance on a manual for a similar purpose has been held to "substantially affect the public." *Anderson,* 368 N.W.2d at 108. We reach a similar conclusion and thus find that the exceptions do not apply.

The Department, however, relies on *Young Plumbing and Heating Co. v. Iowa Natural Resources Council,* 276 N.W.2d 377 (Iowa 1979), to support a different result. In *Young,* the court interpreted one of the exceptions to the statutory definition of "rule." Pursuant to section 17A.2(7)(d), a "determination, decision, or order in a contested case" is not a rule and thus the agency need not comply with rulemaking procedures. The *Young* court held that this exception could be met even though an agency referred to the subject matter of a proposed rule, so long as it was applied in an adjudicative manner dependent upon

and limited to a particular fact situation. *Id.* at 382.

In the present case, the Department argues that the *Young* standard is met. It contends that the manual was merely used to interpret the phrase "most handicapping malocclusion" set forth in 498 I.A.C. § 78.-4(1)(h)(1), in response to a vagueness challenge by petitioner. Thus, it is claimed the manual was used in an adjudicative manner and its use was limited to a particular fact situation—specifically a challenge to a rule on vagueness grounds. We cannot agree with this characterization.

The manual provision used by the Department does not per se define "most handicapping malocclusion." It lists procedures which would not be covered by Medicaid and served as a basis for denial of benefits. While the list was certainly relevant to the fact situation, its use by the Department was not limited to the particular fact situation as required by *Young.* The manual provision was a statement of general applicability and future effect. An agency cannot avoid using rulemaking procedures by issuing such statements in contested case proceedings. *Young,* 276 N.W.2d at 382.

 We therefore conclude that it was improper to rely on a provider's manual as a basis for denying Medicaid benefits. The manual sets forth a policy of general applicability which would substantially affect the public. As such, rulemaking procedures should have been followed. Even so, we do not agree with the district court's determination that it is necessary to reverse the agency decision and remand for new proceedings. While error existed, it does not amount to reversible error. It is evident from the record that a denial of benefits was justified without reference to the provider's manual.

In its final decision the Department indicated:

> "Most handicapping" malocclusions must be those that cause more serious problems than do other malocclusions and this case does not meet that criteria.

Generally speaking, "most serious" would include cases where the person has such misalignment that there are no masticating posterior teeth and they cannot maintain a proper diet, that one's appearance is effected, speech is effected and there is ongoing daily pain.

Substantial evidence would support the agency's conclusion that this criteria was not met. The petitioner's primary symptoms were persistent headaches and the fact that her jaw would snap out of joint. It was appropriate for the Department to conclude that these problems were not most handicapping and not more serious than those problems caused by other malocclusions. Furthermore, according to testimony, petitioner still had several pairs of masticating posterior teeth and her malocclusion was not esthetically undesirable.

Since substantial evidence supports the agency decision without reference to the provider's manual, we reverse the district court and reinstate the agency's decision to deny benefits.

REVERSED.