366 N.W.2d 511 (1985)
TELECONNECT COMPANY, Appellee,
v.
IOWA STATE COMMERCE COMMISSION, Appellant,
AT & T Communications of the Midwest Inc. and Northwestern Bell Telephone Co., Intervenors.
No. 84-144.
Supreme Court of Iowa.
March 20, 1985.
*512 Philip E. Stoffregen, Gen. Counsel, Patrick J. Nugent, Deputy Counsel, and David J. Lynch, Asst. Gen. Counsel, Des Moines, for appellant.
Allan W. Vestal, Kevin H. Collins, Thomas M. Collins, Richard C. Garberson, and Joan Lipsky of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellee.
Considered en banc.
HARRIS, Justice.
By the order challenged on this appeal the district court stayed certain commerce commission temporary rules relating to "access charges." The charges were to be paid to local telephone companies by providers and resellers of long distance service. When notified of the stay, which was ordered ex parte and without bond, the commission moved to dissolve it. We granted permission to bring this interlocutory appeal from the district court's subsequent refusal to dissolve the stay. We reverse the ruling and remand for further proceedings.
The commerce commission is given rule-making authority in Iowa Code chapters 17A and 476. Pursuant to this authority the commission developed rules, called intrastate access charges, which require all intrastate long distance carriers to pay set access charges to local operating companies in order to compensate for their cost of providing long distance access. The rules were promulgated in connection with the divestiture of the AT & T and Bell companies in Iowa. Teleconnect Company is a reseller of long distance service in Iowa and hence is subject to the rules.
The root of this litigation is a claim by Teleconnect that the rules are unsound because they fail to accommodate a discrepancy in the quality of service different carriers receive from local companies. Citing federal regulatory authorities, Teleconnect insists that its competitor, AT & T, receives services from the local companies which is superior to that received by other companies such as Teleconnect. Teleconnect brought this suit to challenge the rules because the access charges are the same for all carriers, rather than being adjusted downward for the other companies said to be receiving inferior service.
This interlocutory appeal does not involve the direct challenge to the rules; that matter is still being litigated in district court. The commission seeks only a review of the order which stayed the operation of the rules on the eve of their effective date.
Teleconnect's petition for review was filed December 30, 1983, the same day the order was entered which stayed the collection of access charges from Teleconnect. Teleconnect argues it faced a crisis because the rules were to be effective the next day. The parties sharply dispute just when Teleconnect knew or reasonably should have known the rules, in the form challenged, would become operational.
It is clear the rules, providing a common access charge to all carriers, had been adopted with an effective date of January 1, 1984. Rule-making procedures on the subject were begun by commission order May 6, 1983. July 1, 1983, was set as the deadline for written comments; hearing was set for July 11, 1983.
After an abortive attempt to make temporary rules conform with similar rules then proposed by the federal communications commission, the Iowa commission formally adopted these emergency rules on November 4, 1983, and made them effective January 1, 1984. The order adopting them also set in motion the process for adopting regular rules on the same subject. Hearing on the regular rules, which were and continued to be in process of formulation, was set for December 20, 1983. Written comments were due December 14, 1983.
When Teleconnect presented the ex parte order for stay on December 30, it urged not only the imminence of the temporary rules but also a crucial explanation of why the matter had not been presented earlier, in time for hearing on notice to the commission. Teleconnect claims to have seen justification *513 for not acting sooner in the twin processes for the temporary and regular rules. It claims to have had a realistic hope its continuing protests would bear fruit, that the commission would see the rightness of its position and amend the temporary rules, adjusting the access charges.
Not surprisingly the commission takes an entirely different view of the events. It argues Teleconnect was in no manner caught unawares but rather had every reason to anticipate the rule for at least several weeks before the eve of its effective date. Two aspects of the stay order are challenged. It was entered ex parte and was entered without bond.
I. Since the stay was ordered in this case we amended Iowa R.Civ.P. 326 to require hearing on notice before staying the action of an agency of state government. The change became effective December 9, 1984. See Iowa Code sections 602.4201 and 602.4202 (Supp.1983). The amendment does not affect this litigation.
Authority to grant stays upon judicial review of agency action is given in Iowa Code section 17A.19(5):
The filing of the petition for review does not itself stay execution or enforcement of any agency action. Upon application the agency or the reviewing court may, in appropriate cases, order such a stay pending the outcome of the judicial review proceedings.
The section itself does not expressly require either notice or hearing. It plainly makes the issuance of the stay discretionary. Some statutes authorizing a stay of agency action do require notice and hearing. 2 Am.Jur.2d Administrative Law § 741 (1962). We assume the legislature's omission of such a requirement was deliberate.
We are not persuaded by the commission's analogy to the notice requirements in certain rules of civil procedure. It is true that the rules, where applicable, are expressly implicated by rule of civil procedure 331. It is also true that generally a court should not act ex parte on a motion or application. Zimmerman v. Purex Corporation Ltd., 256 Iowa 190, 193, 125 N.W.2d 822, 824 (1964). But we are unwilling to say the district court, at the time in question, was without authority or jurisdiction to act on the ex parte application.
II. It of course does not follow that the grant of stay should be affirmed. Where stays are permitted we have developed a rule and procedure which expands slightly on the federal practice.[1] Under the federal cases issuance of a stay of agency action is discretionary. Three factors bear on the determination:
1. The likelihood petitioner will prevail on the merits after full hearing;
2. Whether irreparable damage will be suffered if a stay is denied; and
3. Whether the public interest calls for discretion to be exercised to deny the stay.
Hamlin Testing Laboratories Inc. v. U.S. Atomic Energy Commission, 337 F.2d 221, 222 (6th Cir.1964).
To these three factors we have added a fourth:
Would issuance of a stay substantially harm other parties interested in the proceedings?
Public Employment Relations Board v. Stohr, 279 N.W.2d 286, 291 (Iowa 1979).
Regarding the third federal factor, it is important to remember:
In litigation involving the administration of regulatory statutes designed to promote the public interest, this factor necessarily becomes crucial. The interest of private litigants must give way to the realization of public purposes.
Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n, 259 F.2d 921, 925 (D.C.Cir.1958).
*514 Under our four factors we conclude it was an abuse of discretion to enter the ex parte stay order December 30. We venture no prediction on the final disposition of the dispute on its merits. Neither can we assess the effect of the stay on other interested parties. Our inability to weigh these two factors does nothing to support issuing the stay. We think the other two factors come down strongly against issuing it. Teleconnect's only stake was a loss of revenue. Such a loss, even if substantial, does not amount to irreparable damage. Virginia Petroleum Jobbers Ass'n, 259 F.2d at 925. Finally, we see absolutely no harm to the public in denying the stay.
A showing to develop facts for the four factor test was not held when the order was entered ex parte. This militates strongly against issuance of the stay, and the failure to hold a hearing is simply not justified by the lateness of the hour. Teleconnect should have moved against the temporary rules long prior to December 30, should have done so at least within a few days after November 4, 1983, when the temporary rules were adopted. The crisis, in point of the press of time before their effective date, was in great part brought about by Teleconnect's failure to act until the eleventh hour.
The record does not demonstrate the equivocation which Teleconnect ascribes to the commission rule-making process. Whatever hope Teleconnect may have harbored for a change in the proposed rule, it was not sufficiently realistic to justify the delay in seeking judicial review. Review should have been sought when time was not such a pressing matter.
III. Hearing was held January 6, 1984, on the commission's motion to set aside the stay. Teleconnect argues that any infirmities which clouded the ex parte order were cleared by the commission's participation in that hearing. We have three difficulties with this contention.
In the first place, even pretending the ex parte nature of the order was its only infirmity, we could not approve of habilitating it in such a manner. If it was wrong to enter the order ex parte it is not right or fair to enter it anyway and justify doing so by supplying the notice and hearing later. A wrong practice would otherwise be without a sanction.
Secondly, the stay was issued without bond. We think a bond should have been required. With substantial sums accumulating under the access charges ordered, those companies to whom they would be due deserve the protection of suitable bond. Such an undertaking before issuance of a stay should be required in these circumstances in the same manner as for an injunction under Iowa R.Civ.P. 327.
Finally, we think, even considering all matters raised at the hearing, the stay order still fails the four factor test. We are told the temporary rules were in effect only until the regular ones became effective March 14, 1984. During this time Teleconnect's stake continued to be the same revenues, nothing amounting to irreparable damage. The public's interest remained the same and would not profit from a stay.
We reverse the order of the district court granting the stay and reverse its own order refusing to dissolve it. We remand the case for further proceedings in conformance with this opinion.
REVERSED AND REMANDED.
All Justices concur except REYNOLDSON, C.J., and McCORMICK, SCHULTZ, and CARTER, JJ., who take no part.
NOTES
[1] The procedure is now provided in Federal Rule of Appellate Procedure 18 and requires hearing on notice. A bond may be required.