In the Matter of the Receivership of FARMERS STATE BANK, KANAWHA, Iowa, an Iowa Banking Corporation,

v.

William R. BERNAU, As State Superintendent of Banking, State of Iowa, Applicant.

FARMERS STATE BANK, KANAWHA, Iowa, Appellant,

v.

DEPARTMENT OF BANKING and William R. Bernau, As Superintendent of Banking of the State of Iowa, Appellees.

Nos. 87–1199, 87–1202.

Supreme Court of Iowa.

Dec. 21, 1988.

Earl Hill, David J. Siegrist, and David J. Hanson of Hill & Siegrist, Britt, for appellant.

Thomas J. Miller, Atty. Gen., Donald G. Senneff and Julie F. Pottorff, Asst. Attys. Gen., for appellees.

NEUMAN, Justice.

This is an appeal by the Farmers State Bank of Kanawha, Iowa, (bank) from a district court judgment that affirmed, on judicial review, the agency action of the Iowa Division of Banking and its Superintendent William R. Bernau (superintendent). The superintendent assumed management of the financially troubled bank pursuant to authority granted under Iowa Code sections 524.224 and .226 (1987), and the district court upheld that action and appointed the FDIC as receiver. The central issue on appeal is whether, prior to this action, the bank was entitled to a hearing in conformity with the contested case proceedings of the Iowa Administrative Procedure Act. Because we find the superintendent's order was properly treated, not as a contested case but as "other agency action," we affirm the judgment of the district court.

I. *Background.* Iowa Code chapter 524 governs the regulation of state banks, reposing in the division of banking and its superintendent the power to examine, manage, and, when necessary, seek to dissolve those banks under its supervision. *See generally* Iowa Code §§ 524.-213, .217, .223–.226, .1310 (1987). This court has previously recognized the broad discretion vested in the superintendent when exercising these powers. *Nordbrock v. State,* 395 N.W.2d 872, 874–75 (1986).

It was in 1979 that the close attention of the superintendent first focused on the Farmers State Bank of Kanawha. An examination revealed that the bank's classified (problem) loans, as a percentage of capital, was sixty-six percent. This ratio steadily deteriorated until 1987 when classified loans represented 315 percent of the capital account. Over this eight-year period, the superintendent met annually with the bank's directors to discuss ways of improving the bank's financial position. Prompted by the results of an examination in March 1987, the superintendent notified the bank by letter dated July 1, 1987, that it must submit a plan to merge, sell or recapitalize with an injection of $1 million by 2 p.m. on July 30, 1987. Failure to meet one of these conditions, the superintendent warned, would require him to exercise his statutory authority to assume management of the bank, order it to cease business and apply for the appointment of a receiver. *See* Iowa Code §§ 524.224, .226.

By July 27 the bank was able to recover $68,000 in outstanding loans but could not raise the necessary $1 million capital. Cognizant of the implications of this failure, the bank filed in district court a petition for temporary injunction and request for judicial review of the agency's action. The request for stay centered on an unrelated lawsuit creating a contingent liability that allegedly made the bank unattractive to potential investors. Because the suit was scheduled to be tried within sixty days, the bank characterized as arbitrary and capricious the superintendent's decision to proceed with closure irrespective of the outcome of the trial.

Prompt hearing was granted on the bank's petition and, at this juncture, we pause to commend the district court, Judge Draheim presiding, for its expeditious and decisive handling of this entire matter. At 10:30 a.m. on July 30 the parties appeared before the court to argue the merits of whether the bank was entitled to a stay of the cease business order. Finding no abuse of the superintendent's discretion to take such action, the court denied the stay. Then responding to the bank's request for

an immediate hearing on the merits of the proposed closure, the court adjourned the hearing until 3 p.m. to enable the bank to meet the superintendent's conditions or, failing that, to present evidence in opposition to the agency's action which by then would be final.

At the appointed hour the superintendent closed the bank and assumed its management pursuant to an agency order that found: (1) the bank's capital was impaired; (2) the bank was conducting its business in an unsafe or unsound manner; (3) the bank was either in such a condition that it was unsound, unsafe or inexpedient for it to transact business and/or it was insolvent; and (4) the bank had violated Iowa Code section 524.224(1) regarding the payment of interest on debentures held by bank officers. Back in court at 3 p.m., the bank contended that these findings were made without benefit of a contested case proceeding under section 17A.12 of the Iowa Administrative Procedure Act and, hence, should not be affirmed by the court. Given this opportunity for hearing, however, the bank offered the testimony of superintendent William Bernau relative to the basis for his findings.

Bernau testified that the bank was losing $17,000 per month on operations which, combined with loan losses, resulted in a daily loss of over $3000. The bank's most recent examination revealed a loss of earnings for the period January 1, 1987 to July 28, 1987, totaling $745,031.74. No prospect for recovery was in sight; no profits had been posted for ten months and the bank's net income was positive only one year in the last four. The bank's classified loans, as a percentage of capital, had increased dramatically in the seven years since the bank had come under close scrutiny until finally reaching five times the state average of 61.13 percent. Though technically solvent, the bank's adjusted capital and reserves as a percentage of adjusted gross assets was only 2.24 percent, well below the state average of 8.67 percent. This level of capitalization was deemed inadequate by the superintendent, especially when considered in light of the unacceptable quality of the bank's assets. The superintendent also offered his opinion that gross mismanagement was reflected in the bank's unlawful practice of paying interest on debentures held by bank officers despite the bank's precarious financial position. *See* Iowa Code § 524.404(2). No evidence contradicting the superintendent's testimony was offered.

At the behest of counsel for the parties, the court agreed to submit its written ruling on the bank's petition for judicial review by 6 p.m. so that if the superintendent prevailed, a forty-member team of FDIC personnel could enter the bank and perform the necessary audit for transfer of the bank's assets to a waiting purchaser before morning. At 6:15 p.m. the court delivered a ruling affirming the agency action, procedurally and substantively. By 9 a.m. the following day, July 31, the bank was reopened as an office of the First National Bank of Clarion. This appeal followed.

II. *Standard of Review.* Our appellate review is confined to the correction of errors at law, if any, made by the district court. *Polk County Drainage Dist. Four v. Iowa Natural Resources Council,* 377 N.W.2d 236, 239 (Iowa 1985). We are guided in that review by the standards of Iowa Code section 17A.19(8) (authorizing relief if agency action is unreasonable, arbitrary or capricious; violates constitutional or statutory provisions; exceeds the agency's statutory authority; violates any agency rule; or is made upon unlawful procedure or otherwise affected by error of law). We give weight to the agency's construction of the statutes in question but we are not bound thereby. *See Polk County,* 377 N.W.2d at 239.

III. *Arguments on Appeal.* The bank advances several grounds for reversal of the district court's judgment. Reduced to their essence, however, three principal contentions emerge: first, that the court erred in its refusal to grant a temporary stay order pending judicial review; second, that the court erroneously ratified the superintendent's failure to furnish minimal statutory and constitutional due process prior to assuming the bank's management and ap-

plying for receivership; and, third, that this case demonstrates a failure by the division of banking to promulgate rules and standards for the examination, supervision, takeover and liquidation of banking institutions. We shall address these arguments, and their related sub-parts, in turn.

A. Stay order pending judicial review.

■ Iowa Code section 17A.19(5) (1987) allows a party to request a stay of agency action pending outcome of judicial review proceedings. Issuance of such a stay is discretionary with the court but we have articulated four factors bearing on the determination:

1. The likelihood petitioner will prevail on the merits after a full hearing;
2. Whether irreparable damage will be suffered if a stay is denied;
3. Whether the public interest calls for discretion to be exercised to deny the stay;
4. Whether issuance of a stay would substantially harm other parties interested in the proceedings.

*Teleconnect Co. v. Iowa State Commerce Comm'n*, 366 N.W.2d 511, 513 (Iowa 1985).

The bank contends the district court focused on the third and fourth factors to the exclusion of the first two. Under the record made by the bank, however, and in light of the public interest at stake in these proceedings, no error can be posited on the balancing act performed by the court.

In its petition for stay, the bank virtually conceded the need for a substantial injection of capital to maintain its financial integrity. Its sole ground for the stay was the remote possibility that favorable resolution of a pending lawsuit might make the bank more attractive for potential investors. Openly admitting the possibility of an adverse decision in the pending suit, the bank's petition conceded "the superintendent may still close the bank at that time."

In its hearing before the court, the bank did little to strengthen the dubious claims made in its petition. Given the dearth of evidence that the bank might prevail in a full hearing on the merits, the court was bound to weigh that uncertainty against the undisputed and immediate need for additional capital to protect the depositors' confidence in the institution. The bank was well aware of this latter concern. Nevertheless, the sole thrust of its argument was that the superintendent had already waited seven years for some improvement, so what harm would be done by granting them two more months? Based on this record, the court properly accorded greater weight to the third factor, protection of the public. As we observed in *Teleconnect*:

In litigation involving the administration of regulatory statutes designed to promote the public interest, this factor necessarily becomes crucial. The interest of private litigants must give way to the realization of public purposes.

*Teleconnect*, 366 N.W.2d at 513 (quoting *Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n*, 259 F.2d 921, 925 (D.C.Cir.1958)). Here that public purpose was the need to strengthen the Kanawha bank in the face of an otherwise imminent failure and the predictably severe economic consequences for the surrounding community. *See Priest v. Whitney Loan & Trust Co.*, 219 Iowa 1281, 1295–96, 261 N.W. 374, 382 (1935). We find no abuse of discretion in the trial court's unwillingness to substitute its judgment in these matters for that of the superintendent of banking. The bank's "eleventh hour" request for additional time to rehabilitate itself was properly denied.

B. Statutory and constitutional due process.

■ On July 1 the superintendent advised the bank in no uncertain terms that unless the bank "immediately provide[d] a written plan ... for the sale, merger, or recapitalization" of the bank by July 30, the division of banking would "reserve the right to exercise in our sole discretion, any and all rights set forth in *Iowa Code* Chapter 524 (1987), including, but not limited to, actions available under sections 524.224 and .226 (1987)." At the heart of this controversy lies the parties' dispute over whether this written notice triggered a con-

tested case proceeding under the Iowa Administrative Procedure Act (IAPA) or merely constituted "other agency action" subject to judicial review. As we said in *Allegre v. Iowa State Board of Regents*, " '[t]he importance of the distinction lies in the procedural due process which attaches to contested cases.' " 349 N.W.2d 112, 114 (Iowa 1984) (quoting *Polk County v. Iowa State Appeal Bd.*, 330 N.W.2d 267, 276 (Iowa 1983)).

Under the IAPA, a "contested case" is defined as an agency proceeding in which the legal rights of a party are required, by constitution or statute, to be determined by an agency after opportunity for evidentiary hearing. Iowa Code § 17A.2(2); *Allegre*, 349 N.W.2d at 114. We determined in *Allegre* that if no hearing is required, "or the hearing required is not an evidentiary hearing," then the proceeding properly falls into the residual category of "other agency action." *Id.; see also Iowa State Appeal Bd.*, 330 N.W.2d at 277; Bonfield, *The Definition of Formal Agency Adjudication Under the Iowa Administrative Procedure Act*, 63 Iowa L.Rev. 285, 288 (1977). This latter category, though subject to judicial review under a reasonableness standard, need not be preceded by a formal evidentiary hearing. *See Allegre*, 349 N.W.2d at 116; *Security Savs. Bank v. Huston*, 293 N.W.2d 249, 251 (Iowa 1980); Bonfield, *supra*, at 325–37 (discussing exceptions to evidentiary hearing requirement even in contested cases if premised on inspections or examinations).

We turn then to a consideration of the bank's claim that both the IAPA and the Banking Act require contested case proceedings in the event of a bank takeover. To begin, Iowa Code section 524.225 unquestionably provides that "[j]udicial review of the actions of the Superintendent may be sought in accordance with the terms of the Iowa administrative procedure Act." Reference to this general provision, however, begs the question of what *manner* of review is contemplated by the statute. That, as we have said, turns on the nature of the action.

The statute which defines the nature and scope of the superintendent's authority to take over management of a state bank is Iowa Code section 524.224. The discretionary breadth of the authority conferred on the superintendent is unmistakable: the superintendent "may take over the management" of a state bank "whenever it appears" that certain enumerated criteria have been met (e.g., violation of law, impaired capital, unsound business practices). *See generally* Iowa Code § 524.224. Conspicuously absent from the statute is any suggestion that this extraordinary action must be preceded by notice and opportunity for evidentiary hearing. This is in marked contrast to the opportunity for hearing afforded under section 524.223 in connection with proposed cease and desist orders; to the section 524.305(3) hearing granted on pending applications for incorporation of state banks; and the hearing furnished in connection with pending applications for merger or consolidation of banks by the superintendent under section 524.1403.

We think the legislature's silence regarding the right to a formal adjudicatory procedure under section 524.224 manifests a deliberate choice made in recognition of the highly sensitive nature of bank failures. Historically, the rationale for vesting such broad discretion in the superintendent is based on the recognition that protracted, public hearings on a bank's financial condition would prompt a loss of depositor confidence and the resultant run on withdrawals, loss of a bank's business good will and general adverse effect on the economic soundness of the surrounding community. *Priest v. Whitney Loan & Trust Co.*, 219 Iowa 1281, 1293–94, 261 N.W. 374, 380–82 (1935); *cf. Fuentes v. Shevin*, 407 U.S. 67, 92, 92 S.Ct. 1983, 2000, 32 L.Ed.2d 556, 576–77 (1972) ("the court has allowed summary seizure ... to protect against the economic disaster of a bank failure").

■ Nor has the bank persuaded us that the potential deprivation of property rights inherent in a bank takeover compels a prior evidentiary hearing in order to abide with constitutional notions of due process. That argument was soundly rejected by the

United States Supreme Court in *Fahey v. Mallonee*, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947). Moreover, the Court recently reaffirmed *Fahey's* rationale in a case involving the same actors as in the case before us. *FDIC v. Mallen*, 486 U.S. ——, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988).

In *Fahey*, a bank complained that federal regulations provided for hearing *after* receivership but not before, in alleged violation of the bank's claimed right of due process. Discounting this argument, the Court found no constitutional deprivation given the highly regulated nature of the banking industry, reasoning that

> [t]he delicate nature of the institution and the impossibility of preserving credit during an investigation has made it an almost invariable custom to apply supervisory authority in this summary manner. It is a heavy responsibility to be exercised with disinterestedness and restraint, but in the light of the history and customs of banking we cannot say it is unconstitutional.

*Fahey*, 332 U.S. at 253–54, 67 S.Ct. at 1556, 91 L.Ed. at 2039.

Addressing a similar claim in connection with the FDIC's summary suspension of the president of the Farmers State Bank of Kanawha, the Supreme Court reiterated its view that "[a]n important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation." *FDIC v. Mallen*, 486 U.S. at ——, 108 S.Ct. at 1787, 100 L.Ed.2d at 278. Thus the Court held that the post-suspension procedure authorized by federal banking regulations was not unconstitutional on its face or as applied in the Kanawha case. *See id.* at ——, 108 S.Ct. at 1792, 100 L.Ed.2d at 283.

■ Applying these principles to the case before us, we are convinced the district court accorded the bank the process to which it was statutorily and constitutionally entitled. Neither statute nor constitution conferred on the bank a right to a contested case hearing under the circumstances before us. Accordingly, it was entitled only to those procedural safeguards voluntarily adopted by the agency, the procedural requirements of the banking act, and the general constitutional and statutory requirement that agencies act "reasonably." *Allegre*, 349 N.W.2d at 116.

That reasonableness is amply demonstrated by the record before us. For seven years, the superintendent warned the bank that its authorization to do business was in jeopardy. When the bank's inaction finally impaired the integrity of its deposits, the superintendent furnished written notice of the specific conditions the bank would have to meet to retain its autonomy. Rather than requesting an agency hearing to challenge this proposed action, the bank waited until two days prior to the takeover and then filed a petition for stay and judicial review in the district court. Curiously, the bank then claimed the court had no authority to pursue judicial review because no record had been made before the agency.

Making the best of this anomalous situation, the court properly respected the sensitive nature of the superintendent's proposed action while at the same time giving the bank its full opportunity to meet the superintendent's mandate. When the bank failed to do so and the agency action became final, the court then enforced the bank's right to contest the agency's action by way of a hearing. Because this was not a contested case proceeding but, rather, "other agency action," the court was free to "hear and consider such evidence as it deem[ed] appropriate." Iowa Code § 17A.19(7); *see also Allegre*, 349 N.W.2d at 116 n. 2. In sum, the process employed comported with our statutes and adequately protected the bank from the risk of a mistaken deprivation. *Cf. Woods v. Federal Home Loan Bank Bd.*, 826 F.2d 1400, 1411 (5th Cir.1987); *Guaranty Savs. & Loan Ass'n v. Federal Home Loan Bank Bd.*, 794 F.2d 1339, 1341–42 (8th Cir.1986). The bank's assignment of error is without merit.

## C. Sufficiency of State banking regulations.

We consider only briefly the bank's general challenge to the sufficiency of the standards applied by the superintendent in evaluating the bank's financial integrity. In essence, the bank contends that the rule-making requirements of Iowa Code section 17A.3 compel the agency to define such terms as "impaired capital" and "conducting business in an unsafe or unsound manner" in order to proceed legally under the banking statutes. In the absence of such established rules or standards, the bank contends, the agency's action can only be viewed as arbitrary and capricious and it was erroneous for the court to rule otherwise.

The bank correctly asserts that agency action taken without regard to established rules or standards will be generally viewed as arbitrary and capricious. *See Mathis v. State Conservation Comm'n*, 369 N.W.2d 435, 437 (Iowa 1985). It misperceives, however, the purpose of the rule-making requirement in the context of the present case.

In *Doe v. Iowa State Bd. of Physical Therapy*, 320 N.W.2d 557, 561 (Iowa 1982), we observed that the rule-making requirement of section 17A.3 is "intended to prohibit undisclosed but authoritative interpretations of law or policy that are equivalent to secret rule-making." In *Doe*, the question was whether a licensing board unlawfully attempted to bind the petitioner with the precedential effect of the board's prior interpretation of the statute in question. We held that where, as in *Doe*, the board was merely applying the statute directly, "[n]o 'secret law' was involved ... [and] section 17A.3 does not come into play." *Id.* (citing *Young Plumbing & Heating Co. v. Iowa Natural Resources Council*, 276 N.W.2d 377, 383 (Iowa 1979)); *cf. Fears v. Iowa Dep't of Human Servs.*, 382 N.W.2d 473, 475–76 (Iowa App.1985).

The principle announced in *Doe* applies with equal force here. Section 524.224 enumerates nine specific grounds authorizing the superintendent to take over the property and business of a state bank. Under the statute, the superintendent can act only in certain limited circumstances. *See* Iowa Code section 524.224 (e.g., illegal acts, impairment of the bank's capital, or an otherwise unsound or insolvent condition). Contrary to the bank's assertion, the statutory terms applied here carry with them a commonly understood meaning in the banking industry. *Fahey v. Mallonee*, 332 U.S. at 250, 67 S.Ct. at 1556, 91 L.Ed. at 2037 ("The provisions are regulatory. They do not deal with unprecedented economic problems of varied industries. They deal with a single type of enterprise and with the problems of insecurity and mismanagement which are as old as banking enterprise.").

Nor under the record before us, can the bank support a claim that it was without notice or otherwise surprised by the superintendent's assessment of its financial instability. As we have previously noted, for over seven years the bank had been regularly apprised of the need to inject additional capital to offset its increasingly insecure loan portfolio. We conclude that where, as here, the agency has simply exercised its broad discretion in applying a statute to the specific set of facts before it, no violation of the rule-making requirement of section 17A.3 will be found. *See Young*, 276 N.W.2d at 383. The district court was correct in so ruling.

IV. *Summary*. In summary, we reaffirm our recognition of a legislative intent to vest broad discretion in the superintendent of banking with respect to the supervision and control of state banks. Courts should interfere only when it appears that discretion is abused. No such abuse has been demonstrated here.

Additionally, we hold that the superintendent's decision to assume management of a state bank under Iowa Code sections 524.224 and .226, though subject to judicial review, does not give rise to a contested case proceeding and the full panoply of procedures authorized under Iowa Code section 17A.12. Finally, we hold that the superintendent's enforcement of the standards of section 524.224 to the facts before him implicated no rule-making responsibility under section 17A.3.

We have considered all other assignments of error raised by the bank, whether or not addressed in this opinion, and find no basis upon which to reverse the district court. Accordingly, the court's judgment is affirmed in its entirety.

AFFIRMED.

All Justices concur except CARTER, J., who dissents.

CARTER, Justice (dissenting).

I agree with the court's conclusions that the need to maintain depositor confidence militates against a preseizure hearing concerning the right of the superintendent to "take over the management" of the bank. Clearly, however, the federal due process clause mandates that the bank be granted an opportunity for a postseizure hearing at which to challenge the legality of the superintendent's actions.

The opinion of the court suggests the requirements of the due process clause are satisfied by the bank's right to seek judicial review of agency action under Iowa Code section 17A.19 (1987). The opinion assumes that at that stage of the proceedings an adequate postdeprivation hearing would be available in the district court. Assuming that the right to that type of hearing would satisfy constitutional due process, it does not, I submit, satisfy the requirements of Iowa Code section 17A.12(1). Under that statute, if a constitutional right to a hearing exists, this triggers a statutory right to a contested case hearing before the agency. *See* Iowa Code § 17A.2(2). The bank was denied that right in the present case.

This issue involves more than whether the hearing is to be held before the agency or before a court. The scope of the hearing is also involved. At a contested case hearing before the agency under section 17A.12(1), the bank would have the right to offer evidence relevant to all material issues in the controversy. In contrast, the right to present evidence on judicial review of "other agency action" under section 17A.19 is extremely narrow.[1] As a result of the differences in the scope of these hearings, substantial procedural rights of the bank have been denied.

---

1. We have held that additional evidence offered in the district court in a review of "other agency action," where no contested case hearing has been held before the agency, is for the limited purposes of "highlighting what actually occurred in the agency so as to facilitate the court's search for errors of law or unreasonable, arbitrary or capricious action." *Sheet Metal Contractors of Iowa v. Commissioner of Ins.*, 427 N.W.2d 859, 867 n. 3 (Iowa 1988); *Krause v. State*, 426 N.W.2d 161, 165 n. 1 (Iowa 1988).