# IN THE COURT OF APPEALS OF IOWA

No. 22-1313
Filed November 21, 2023

**JOHN DOE,**
     Plaintiff-Appellant,

**vs.**

**IOWA BOARD OF MEDICINE,**
     Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Celene Gogerty, Judge.

A physician appeals the district court's denial of his petition for judicial review challenging the Iowa Board of Medicine's order to submit to a clinical competency evaluation and, ultimately, citing him for one count of professional incompetency. **AFFIRMED.**

Michael M. Sellers and Trent W. Nelson of Sellers, Galenbeck & Nelson, Clive, for appellant.

Brenna Bird, Attorney General, and Katie F. Carl, Assistant Attorney General, for appellee.

Heard by Greer, P.J., and Ahlers and Buller, JJ.

**GREER, Presiding Judge.**

Dr. John Doe challenges the district court's denial of his petition for judicial review of the Iowa Board of Medicine's (the Board) decision to cite him for professional incompetence. Dr. Doe makes multiple arguments on appeal related to both the order for a clinical competency evaluation that came before the professional incompetence charge and the Board's ultimate decision, following a contested case hearing, to cite him for professional incompetence. Because we find that objections to the clinical competency evaluation order are moot and untimely and that the Board's findings on professional incompetency are supported by substantial evidence, we affirm the district court's denial.

**I. Background Facts and Prior Proceedings.**

Dr. Doe is a licensed physician with specialties in occupational and emergency medicine practicing in rural Iowa. He was issued an Iowa medical license in 2011. Between 2014 and 2016, the Board learned of two malpractice settlements between Dr. Doe and two separate patients.[1] The first settlement involved a patient (patient 1) who fell out of bed and hit her head on her nightstand in November 2012. She reported pain in her right arm, right shoulder, and neck, and went to the emergency room (ER), where Dr. Doe treated her. She was discharged from the ER with muscle relaxers and pain medication and sent home. After she was sent home, she became increasingly confused and agitated. Patient 1 returned to the ER the next day, where Dr. Doe again examined her. After she could no longer move her legs, her family requested that she be

---

[1] These are administrative file numbers 02-2014-625 and 02-2016-139.

transferred to a hospital in Des Moines. In Des Moines, she was diagnosed with a dislocation of her cervical spine and spinal cord injury that required surgery. After spinal surgery, patient 1's condition declined, and she died in December 2012. In July 2014, Dr. Doe's malpractice insurer issued a National Practitioner Data Bank report to the Board disclosing that a confidential settlement resolved the matter with patient 1.

The second settlement involved a patient (patient 2) who was just over six weeks pregnant in September 2013. She reported abdominal pain and went to the ER, where Dr. Doe was on duty. Dr. Doe diagnosed her with a urinary tract infection (UTI), discharged her with pain medication, and sent her home. At home, she noticed bleeding while she was going to the bathroom. She spoke with Dr. Doe the next morning, and he told her that she had a UTI and should stay home. The same day, she went to her obstetrician, who discovered that she had an ectopic pregnancy. At a hospital in Omaha, patient 2 had the pregnancy terminated and her left fallopian tube removed. After patient 2 brought a malpractice suit, she settled with Dr. Doe for $50,000 in March 2017.

In September 2014, the Board sent Dr. Doe an evaluation on the Board's point system for analyzing personal liability claims.[2] The Board sent Dr. Doe an investigative inquiry in November 2014 informing him of their awareness of the first settlement and requesting a response within twenty days; Dr. Doe did not

---

[2] The Board uses this form to determine whether to open an investigation after an insurance company informs the Board of a malpractice settlement. The point system required investigation of the physician by the Board only if they scored seven points or more. Dr. Doe makes mention of this form in his brief but, as we discuss below, it goes to his probable cause analysis, which we find is moot.

respond.[3] Then, in March 2016, the Board sent Dr. Doe a letter related to its awareness of patient 2 initiating a malpractice suit against him. The letter contained the following information: "[a]fter careful consideration, the Board concluded that the matter does not warrant investigation and the Board closed the file. A file was opened but no investigation was undertaken. The information will remain part of your permanent record with the Board."

In September 2016, the Board filed a statement of charges against Dr. Doe for failing to comply with its request for a response in the investigation of the first settlement. In February 2017, Dr. Doe entered into a settlement agreement with the Board resolving those charges. In that settlement agreement, Dr. Doe was warned for failing to respond or comply with the Board investigation and assessed a $2500 civil penalty. In March, Dr. Doe settled the malpractice case with patient 2 for $50,000. After learning of the settlement, the Board decided to open an investigation in April.

The same month Dr. Doe also received an investigative inquiry related to the second settlement, requesting a detailed response with pertinent medical records and legal documents. In May, Dr. Doe responded with details and attached medical records and legal documents. He also described what he had learned from failing to diagnose patient 2's ectopic pregnancy.

Also in May 2017, Dr. Doe's attorney passed along to Dr. Doe a confidential letter of warning from the Board regarding the first settlement. The Board wrote

---

[3] The Board attempted to obtain a response from Dr. Doe through repeated contacts: via phone in February 2015, March 2015, May 2015, August 2015, January 2016, and March 2016; via letter in August 2015; and via email in January 2016.

that the letter "concludes the Board's investigation of this case" but also that "[t]he Board reserves the right to review and reconsider this matter should it be deemed appropriate." The Board requested that Dr. Doe submit his own letter in response describing what he had learned from the matter within sixty days. Some 130 days later, in September 2017, Dr. Doe submitted the requested letter through his attorney.

Then, on September 15, 2017, the Board emailed Dr. Doe and his attorney a confidential clinical competency evaluation order demanding that Dr. Doe submit to a clinical competency evaluation through the Center for Personalized Education for Physicians (CPEP) within ninety days. The Board relied on the two settlements as probable cause for doing so. In the order, the Board wrote that it had "serious concerns about [Dr. Doe's] treatment of [patient 1]" and was "concerned that [Dr. Doe] did not make arrangements for an MRI to rule out a spinal cord injury, particularly given her persistent symptoms." The Board also wrote that it had "serious concerns about [Dr. Doe's] evaluation, testing, and treatment of [patient 2] . . . and [Dr. Doe] should have performed a pelvic exam and ordered labs and an ultrasound to rule out an ectopic pregnancy."

Dr. Doe did not object to the request for the clinical competency evaluation or request a hearing. Instead, over two hundred days later, he completed the clinical competency evaluation at CPEP, which lasted over two days in April 2018. Apart from undergoing two days of in-person testing with three simulated patients, an electrocardiogram (ECG) interpretation, and a multiple-choice exam, the evaluation also involved a review of charts from twenty-four of Dr. Doe's February 2018 patients submitted by Dr. Doe along with interviews with three medical

consultants who specialized in emergency medicine. Before the in-person testing, Dr. Doe also completed an intake questionnaire and interview via phone.

The CPEP assessment[4] concluded that Dr. Doe demonstrated deficiencies in medical knowledge, clinical judgment and reasoning, patient care documentation, practice-based learning, and communication skills. It also stated that Dr. Doe's "clinical judgment and reasoning were not adequate. His documentation was inadequate in actual patient charts and acceptable, with need for improvement, for the Simulated Patient (SP) encounters. [Dr. Doe's] communication skills were inadequate with SPs . . . ." The Board ordered Dr. Doe to participate in a structured individualized educational intervention including multiple required study programs: point-of-care experience, an educational preceptor, continuing medical education, and a self-study and clinical assessment.

In August 2019, the Board issued a statement of charges that alleged one count of professional incompetency against Dr. Doe based on the results of the CPEP evaluation.[5] In April 2021, Dr. Doe moved for summary judgment, reconsideration of lack of probable cause to issue the statement of charges, and motion to expunge the order requiring his competency evaluation, the result of which became part of the basis for the professional incompetency charge. In its response to the motion, the State argued that Dr. Doe's challenges to the CPEP evaluation were untimely and moot because Dr. Doe had already submitted to the

---

[4] The CPEP report is nineteen pages long and addresses medical knowledge and patient care, clinical judgment and reasoning, patient care documentation and communication skills after reviewing charts, testing and conducting interviews of Dr. Doe.

[5] This charge was issued pursuant to Iowa Code sections 147.55, 148.6(2)(g) and (i), and 272C.10(2) (2019) and Iowa Administrative Code rule 653-23.1(2).

evaluation. The State also moved to exclude expert witness testimony including an occupational medicine practitioner and radiologist, the executive director of the Board, and two attorneys and to strike proposed exhibits, including letters of opinion by the expert witnesses.

The administrative law judge (ALJ) denied Dr. Doe's motion for summary judgment, finding that there was no authority for summary judgment in a contested case proceeding. The ALJ also denied the request for reconsideration and expungement, finding that Dr. Doe "had an opportunity to object to the Board's order for clinical competency evaluation that was issued in September 2017. In order to have done so, however, he would have had to file the objection within [fourteen] days of the issuance of the evaluation order." But, because Dr. Doe "did not file such an objection . . . he has waived objection to the evaluation order in this disciplinary proceeding. Accordingly, whether there was probable cause [to order him to complete the competency evaluation] is no longer an issue that [Dr. Doe] may raise." In a separate written ruling, the ALJ also denied the State's motion as to all five challenged witnesses. In this written denial, the ALJ reiterated that Dr. Doe "did not file an objection to the evaluation order when it was issued in 2017 and therefore waived any objection to the evaluation order."

In May 2021, the Board held a contested case hearing on the matter. Dr. Doe submitted the CPEP evaluation as an exhibit at this hearing and never objected to its admission or use during the proceeding. At the hearing, the Board's chief investigator, the medical director of CPEP, two medical professionals, Dr. Doe's past attorney, and Dr. Doe testified.

At the hearing, the medical director of CPEP testified about the competency evaluation methodology. The two medical professionals reviewed the medical records of the cases underlying the two malpractice settlements and presented their determinations of the appropriate standard of care for those two patients. Neither medical professional was present when Dr. Doe treated those patients and neither one had met Dr. Doe. Neither one was familiar with the entire CPEP evaluation of Dr. Doe nor the CPEP evaluation process; they had not reviewed the twenty-four patient files that Dr. Doe submitted to CPEP either. Dr. Doe challenged the reasoning for entering into the first settlement through testimony by his former attorney, but the ALJ sustained the State's objection to that testimony, finding "[t]he question of whether the competency evaluation was appropriate and whether the Board had probable cause to believe that there were concerns about competency is not an issue in this proceeding." In his testimony, Dr. Doe explained his educational background, his licensure, and his work experience. Dr. Doe also testified that he asked questions about CPEP before attending the evaluation because his attorney at the time did not know anyone who had taken a test at CPEP before; his previous attorney also helped him write his letters to the Board explaining what he had learned from the treatment of the two patients and received communications from the Board including the order for a clinical competency evaluation. Lastly, Dr. Doe testified that he was very nervous before the CPEP evaluation and did not feel that it was an accurate depiction of his skills as a physician.

After the hearing and the close of the record, in September 2021, Dr. Doe moved for consideration of additional proposed exhibits—a letter from Dr. Doe's

ER supervisor, four letters from Dr. Doe's colleagues, and documents related to medical competency testing in Texas—which the Board denied.

The Board issued its findings of fact, conclusions of law, decision and order at the end of September 2021.  In the order, "the Board found the comprehensive assessment performed by CPEP to be a reliable measure of [Dr. Doe's] professional competency, despite [Dr. Doe's] testimony to the contrary."  The Board also found that Dr. Doe's evidence in the form of testimony by the two medical experts did not outweigh the CPEP assessment because "[n]either of the experts had reviewed the CPEP report in its entirety, nor did they review [Dr. Doe's] [twenty-four] patient files that were reviewed by the CPEP clinical consultants as part of the comprehensive evaluation."  Lastly, the Board was "satisfied that the evaluation that [Dr. Doe] underwent at CPEP . . . is an accurate demonstration of [Dr. Doe's] knowledge and professional competency."  Ultimately, the Board cited Dr. Doe for professional incompetence and placed him on probation for five years, which required that he follow the recommendations from the CPEP assessment, participate in worksite monitoring, submit quarterly reports, make appearances before the Board upon the Board's request, and pay a quarterly monitoring fee.

Dr. Doe requested a rehearing in October 2021, the State resisted, and the Board denied the request in December 2021.  In denying the request, the Board found that Dr. Doe failed to demonstrate that his proposed exhibits were not available at the time of the May 2021 hearing or good cause for introducing the exhibits after the hearing.  In January 2022, Dr. Doe filed a petition for judicial review of the Board's decision. The district court held a hearing in June 2022 and

in July 2022, and ultimately denied the petition by written ruling. Dr. Doe now appeals.[6]

## II. Standard of Review.

We review a district court's denial of a petition for judicial review of agency action for correction of errors at law. *Strickland v. Iowa Bd. of Med.*, 764 N.W.2d 559, 561 (Iowa Ct. App. 2009). We apply the standards set forth in the Administrative Procedure Act, Iowa Code chapter 17A (2022), to determine whether our conclusions are the same as those of the district court. *Doe v. Iowa Bd. of Med. Exam'rs*, 733 N.W.2d 705, 707 (Iowa 2007). "Pursuant to Iowa Code section 17A.19(10), a court must reverse agency action when any one of several enumerated circumstances exists and 'substantial rights of the person seeking judicial relief have been prejudiced' as a result." *Mosher v. Dep't of Inspections & Appeals*, 671 N.W.2d 501, 508 (Iowa 2003) (quoting Iowa Code § 17A.19(10)).

"It is not the role of the court to reassess the evidence or make its own determination of the weight to be given the various pieces of evidence." *Doe v. Iowa Bd. of Pharmacy*, No. 14-0089, 2014 WL 6682050, at *3 (Iowa Ct. App. Nov. 26, 2014). Rather, "[i]t is the agency's duty 'as the trier of fact to determine the credibility of the witnesses, weigh the evidence, and decide the facts in issue. We are bound by the agency's findings so long as they are supported by

---

[6] While the appeal was pending before our court, Dr. Doe submitted a notice of additional authorities. We strike that notice and have not considered that material as it was outside of the record on appeal. *See Jensen v. Sattler*, 696 N.W.2d 582, 584–85 (Iowa 2005) ("[A] party may not use such a notice to interject additional written argument into an appeal."); *see also* Iowa R. App. P. 6.801 (defining the composition of the record on appeal); *In re Marriage of Keith*, 513 N.W.2d 769, 771 (Iowa Ct. App. 1994) ("We are limited to the record before us and any matters outside the record on appeal are disregarded.").

substantial evidence.'" *Christiansen v. Iowa Bd. of Educ. Exam'rs*, 831 N.W.2d 179, 192 (Iowa 2013) (citation omitted). "Evidence is substantial if 'a reasonable person would find it adequate to reach the given conclusion, even if a reviewing court might draw a contrary inference.'" *Bush v. Bd. of Trs.*, 522 N.W.2d 864, 866 (Iowa Ct. App. 1994) (citation omitted).

**III. Analysis.**

Doe raises four arguments on appeal. Three are related to the order for the clinical competency evaluation at CPEP: whether the Board had authority to reopen closed investigations, if there was probable cause for the order, and whether notice was given to Dr. Doe to contest the order. The other argument made is that the Board failed to consider material and relevant evidence of Dr. Doe's competency at the May 2021 contested case hearing. We begin with the arguments related to the order for the clinical competency evaluation.

**A. Order to Undergo Clinical Competency Evaluation.**

Doe submitted to the competency evaluation without formally objecting to it as allowed under the rules, but he continues his attempt to revisit the probable cause findings underlying the order and the notice he got regarding his ability to contest the order for evaluation. So, we look to the mootness doctrine on this question because mootness is a threshold question. *Homan v. Branstad*, 864 N.W.2d 321, 327 (Iowa 2015). But Dr. Doe has three problems—one and two relate to mootness and the third deals with the record we review on appeal: (1) he failed to timely object to the order setting the clinical competency evaluation, (2) he voluntarily submitted to the evaluation, and (3) the evaluation was presented as evidence at the contested case hearing by Dr. Doe without objection by Dr. Doe.

"[C]ourts do not decide cases when the underlying controversy is moot." *Belin v. Reynolds*, 989 N.W.2d 166, 171 (Iowa 2023) (citation omitted). An issue is moot when "it no longer presents a justiciable controversy because the issues involved are academic or nonexistent." *Homan*, 864 N.W.2d at 328 (citing *Iowa Bankers Ass'n v. Iowa Credit Union Dep't*, 335 N.W.2d 439, 442 (Iowa 1983)). An issue is academic or nonexistent when it would not "be of force and effect with regard to the underlying controversy." *Id.* (citing *Women Aware v. Reagan*, 331 N.W.2d 88, 92 (Iowa 1983)); *accord Belin*, 989 N.W.2d at 171 (explaining that an order to produce documents that the defendants had already turned over would have no force or effect in the underlying controversy). In other words, "[m]ootness . . . generally applies where there is a lack of a real live controversy which deprives the court of the ability to provide the parties with a remedy." *Irving v. Emp. Appeal Bd.*, 883 N.W.2d 179, 187 (Iowa 2016); *accord Vasquez v. Iowa Dep't of Hum. Servs.*, 990 N.W.2d 661, 667 (Iowa 2023) (finding no real live controversy when the department had already paid for the surgeries that it contested on appeal).

Here, Dr. Doe completed the CPEP evaluation in April 2018 without objection. The results of the evaluation were considered by the Board in its determination to charge him with one count of professional incompetency. Dr. Doe not only submitted to the CPEP evaluation without objection, he also made it part of his own evidence in the May 2021 contested case hearing on the professional incompetency charge. Any ruling on this issue would not change the fact that the CPEP evaluation already exists and was used as evidence at the contested case hearing, as such there is no live controversy over the evaluation order because Dr.

Doe already submitted to the evaluation and used it in his own case without objection[7], and as such, we find Dr. Doe's challenges to the order now moot.

In addition, Dr. Doe's challenges to the order to submit to a clinical competency evaluation are untimely as they come long after September 2017; Dr. Doe waived his right to object by failing to do so during the appropriate time frame. "Iowa Code section 272C.9(1) [(2019)] provides the Board with the authority to order a licensee to submit to a physical, mental, or clinical competency examination so long as there is 'probable cause' to do so." *Skaufle v. Iowa Bd. Of Med. Exam'rs*, No. 07-0875, 2008 WL 942290, at *3 (Iowa Ct. App. 2008). The Iowa Administrative Code lays out the requirements and timeline for objecting to an order for a clinical competency evaluation:

> A licensee who is the subject of a board evaluation order and who objects to the order may file a request for hearing. The request shall be filed within [fourteen] days of issuance of the evaluation order. A licensee who fails to timely file a request for hearing to object to an evaluation order waives any future objection to the evaluation order in the event formal disciplinary charges are filed for failure to comply with the evaluation order or on any other grounds.

Iowa Admin. Code r. 653-24.4(3). The fourteen-day window for objection to the order and a request for a hearing closed in September 2017. Although Dr. Doe was represented by counsel and both he and his counsel received the order to submit to a clinical competency evaluation via email, Dr. Doe testified at the May 2021 contested case hearing that he decided to take the evaluation. And, without objecting or requesting a hearing, Dr. Doe did in fact take the evaluation at CPEP

---

[7] We also note that when a party introduces evidence and then later complains about the court's error on considering it, waiver applies. *See State v. Trane*, 984 N.W.2d 429, 435 (Iowa 2023) (noting Trane waived error as to the court's consideration of evidence he introduced).

over the course of two days in April 2018.  Dr. Doe did not object to the order for this clinical competency evaluation until after the Board received the results and relied on those results as the basis for its professional incompetency charge.  Dr. Doe's objection comes long after the fourteen days provided for in the Board's regulations for objection and, as such, he waived any right to object to the order.

Dr. Doe attempts to wrap his untimely and moot challenges to the order for a clinical competency evaluation into analysis regarding whether the Board had probable cause to issue the order.  But "[t]he question of whether probable cause exists is the type of issue that can be raised and decided at a contested case hearing."  *Irland v. Iowa Bd. of Med.*, No. 21-0331, 2022 WL 610449, at *2 (Iowa Ct. App. Mar. 2, 2022).  Here, while Dr. Doe was represented by counsel, he failed to object to the clinical competency order and thus triggered a contested case hearing where he could question the Board's probable cause.  *See* Iowa Code § 272C.4 (outlining one of the duties of the Board as establishing "procedures by which complaints which relate to licensure or to licensee discipline shall be received and reviewed by the board").  Because Dr. Doe did not request a hearing in September 2017, he waived any future objections to the order—including his objections in this appeal.  The ALJ weighed in and rejected Dr. Doe's objections based on probable cause underlying the evaluation order, finding that because the objections were to a moot issue and untimely, it would not address the underlying merits, and we find the same here.

Dr. Doe also attempts to raise a due process challenge to the clinical competency order.  Here, again, Dr. Doe's challenge is untimely and misplaced.  Under the United States and Iowa Constitutions, "no person shall be deprived of

life, liberty, or property, without due process of law." U.S. Const. amend. XIV; Iowa Const. art. I, § 9. The type of agency action determines the due process afforded to the parties involved. *Greenwood Manor v. Iowa Dep't of Pub. Health*, 641 N.W.2d 823, 833 (Iowa 2002). The order for a clinical competency evaluation was other agency action. *See Strickland*, 764 N.W.2d at 562 (explaining that only the hearing that follows an objection to an order for a clinical competency evaluation is a contested case proceeding); *Irland*, 2022 WL 610449, at *2 (finding that an order for a competency evaluation only provides the opportunity to request a contested case proceeding in the form of a hearing). In the case of other agency action, "[p]arties are only entitled to those procedures voluntarily promulgated by the agency, and to the general requirement that the agency act reasonably." *Greenwood Manor*, 641 N.W.2d at 834 (citing *Farmers State Bank v. Bernau*, 433 N.W.2d 734, 740 (Iowa 1988)); *accord Hartwig v. Bd. of Nursing*, 448 N.W.2d 321, 323 (Iowa 1989) (holding that even an omitted procedural step required by statute or regulation does not give rise to a due process violation without a showing of prejudice). And to the extent that Dr. Doe believed he had no administrative remedy, yet was adversely affected by the order to submit to a clinical competency evaluation, he has no explanation for why he then did not seek judicial review under Iowa Code section 17A.19(1) (2022) at the time he received the order—before complying with it.

Finally, the Iowa Administrative Code provides the due process afforded to those ordered to undergo a clinical competency evaluation, and requires that the content of the order include:

       *a. Probable cause.*  A showing by the board that there is probable cause to order the licensee to complete an evaluation.
       *b. Nature of evaluation or screening.*  A description of the type of evaluation or screening that the licensee must complete.
       *c. Evaluation facility.*  The name and address of the examiner or evaluation or treatment or screening facility that the board has identified to perform the evaluation.
       *d. Scheduling the evaluation.*  The amount of time in which the licensee must schedule the required evaluation.
       *e. Completion of the evaluation.*  The amount of time in which the licensee must complete the evaluation.
       *f. Board release.*  A requirement that the licensee sign all necessary releases for the board to communicate with the evaluator or the evaluation or treatment program and to obtain any reports generated by the program.

Iowa Admin. Code. r. 653-24.4(1).  The order for a clinical competency evaluation provided to Dr. Doe contained exactly those six items and therefore did not fail to provide Dr. Doe with sufficient notice to satisfy due process requirements. Although Dr. Doe argues that the Board failed to provide him notice of his ability to object to the order—and thus present evidence at a contested case hearing questioning the Board's probable cause—the Board was not required to give such notice, so that failure is not a basis for relief now.[8]

**B. Failure to Consider Evidence.**

Next, we turn to Dr. Doe's assertion that the Board failed to consider relevant evidence he presented at the May 2021 contested case hearing—when the Board was deciding whether to cite Dr. Doe for professional incompetence—

---

[8] To the extent that Dr. Doe alleges that he was unaware of the law governing the Board's authority, in his February 2017 settlement agreement on the charge of failing to respond or comply with a Board investigation, Dr. Doe accepted charges under Iowa Administrative Code rule 653-24.2.  The Board's authority for ordering a physical, mental, or clinical competency evaluation is contained in the same chapter, at rule 653-24.4.

and thus, relied only upon the competency assessment to make its decision.[9] Much of Dr. Doe's argument develops around the theme that CPEP is a "strawman" organization that "rubberstamps" and benefits from the Board's requested outcome and that the CPEP evaluation is an "ill-begotten assessment by a self-interested reviewer."[10]  But, the contested case proceeding was related to the charge of professional incompetence only.  And to that end, the ALJ managing the hearing allowed Dr. Doe to present his offered exhibits and testimony by two medical experts and Dr. Doe's past legal counsel.  Dr. Doe also offered testimony to explain his position.  And, during the proceeding, at no point did the State object to any of this evidence, so the ALJ made no ruling refusing to admit any of Dr. Doe's offered evidence.  At the same time, much of the evidence presented by Dr. Doe related to his moot and untimely challenges to the order for the clinical competency evaluation.

The district court, in its appellate capacity, found no abuse of discretion by the Board as it did consider and discuss all evidence presented at the hearing.  On appeal, Dr. Doe urges that the Board decision was

> not supported by the quality of evidence that would be deemed sufficient by a neutral, detached and reasonable person pursuant to Iowa Code § 17A.19(10)(f); is the product of reasoning so illogical as

---

[9] Dr. Doe did attempt to introduce five letters of support from medical colleagues, but the Board denied their admission.  *See* Iowa Admin. Code r. 653-25.24(2)(e) (providing that a party seeking to reopen the record in a contested case proceeding in order to offer additional evidence must demonstrate that the offered evidence is material and arose after the close of the original hearing record, or good cause exists for the party's failure to present the evidence at the original hearing and the party had not waived the right to present additional evidence).  Dr. Doe failed to demonstrate that the letters could not be procured prior to the hearing in May 2021.

[10] To put it simply, Dr. Doe contends the CPEP gets thousands of dollars for evaluating a physician and then thousands more for recommending and providing the classes and training required for licensure.

to render it wholly irrational pursuant to Iowa Code § 17A.19(10)(i); is the product of decision making in which the agency did not consider a relevant and important matter relating to the propriety or desirability of the action in question pursuant to Iowa Code § 17A.19(10)(j); and is otherwise unreasonable, arbitrary, capricious and an abuse of discretion. Iowa Code § 17A.19(10)(n).

So to the extent that Dr. Doe's argument involves any failure of evidence to support the Board's decision to cite him for professional incompetence, we consider whether there was substantial, relevant evidence presented at the contested case hearing to support the Board's ruling. "Evidence is substantial when 'a neutral, detached, and reasonable person' would find it sufficient 'to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance.'" *Dawson v. Iowa Bd. of Med. Exam'rs,* 654 N.W.2d 514, 518 (Iowa 2002) (referencing Iowa Code § 17A.19(10)(*f*)(1)).

Here, we find that the Board's ultimate conclusions surrounding the professional incompetency of Dr. Doe were supported by substantial evidence. We note on this point that it is not our role to review whether the Board could have reached a different conclusion, but merely whether the conclusion that it did reach was backed by adequate support such that a reasonable person could come to the same result. *See Bush*, 522 N.W.2d at 866. "Where evidence is in conflict or reasonable minds might disagree about the conclusions to be drawn, the court is bound to accept the agency's findings." *Eaves v. Bd. of Med. Exam'rs*, 467 N.W.2d 234, 237 (Iowa 1991) (citing *Aluminum Co. of Am. v. Emp. Appeal Bd.*, 449 N.W.2d 391, 394 (Iowa 1989)).

At the May 2021 hearing, the Board heard testimony by CPEP's medical director on CPEP's evaluation methodology and ultimate conclusions regarding Dr. Doe, and the CPEP report was admitted into evidence. While Dr. Doe cross-examined CPEP's medical director and questioned CPEP's methodology, the Board had substantial evidence for it to find, based on the results of the CPEP evaluation, that Dr. Doe was not meeting professional standards: he was deficient in medical knowledge, clinical judgment and reasoning, patient care documentation, practice-based learning, and communication skills. CPEP's staff came to this conclusion after Dr. Doe completed an intake questionnaire and phone interview, examined three simulated patients, interpreted an ECG, completed a multiple-choice exam, submitted charts from twenty-four patients, and interviewed with three medical consultants who specialized in emergency medicine. The Board, in its order, explained that it gave the opinions of Dr. Doe's medical experts limited weight because they had not reviewed the same detailed information found in the CPEP report, including the twenty-four patient charts, and found that Dr. Doe's testimony that he was nervous the day of the exam did not undermine the CPEP's results and was, in fact, concerning because Dr. Doe worked in ERs, a high-pressure environment.

When reviewing the record as a whole, we find substantial evidence to support the Board's finding of professional incompetency and that the conditions imposed were reasonable given that evidence.

**IV. Conclusion.**

Because we find Dr. Doe's challenges to the order for a clinical competency evaluation moot and untimely and that there was substantial evidence presented

at the May 2021 contested case hearing for the Board to find that Dr. Doe engaged in professional incompetence, we find no basis to overturn the Board's decision. We affirm the district court's denial of Dr. Doe's petition for judicial review.

**AFFIRMED.**