Charles F. ALLEGRE, George G. Ball, Gordon B. Denton, Mary Kay Eakin, Josef W. Fox, William E. Luck, Arlene Ruthenberg, Ruth Sevy, Keith McKean and Leland L. Wilson, Appellants,

v.

IOWA STATE BOARD OF REGENTS, Appellee.

No. 83–686.

Supreme Court of Iowa.

May 16, 1984.

Charles E. Gribble and Gerald L. Hammond of Sayre & Gribble, P.C., Des Moines, for appellants.

John W. Sabbath and Harold B. Strever, Jr., of Reed, Merner, Sabbath, Strever, Zanville, Oppold & Hansen, Cedar Falls, and Joseph E. Flynn, St. Paul, Minn., for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McCORMICK, McGIVERIN and LARSON, JJ.

McGIVERIN, Justice.

Petitioners are ten former members of the faculty of the University of Northern Iowa who assert they are entitled to payment for unused and accumulated sick leave to the date of their retirement pursuant to Iowa Code section 79.23. They appeal from a district court decision which dismissed their petition for judicial review on the ground that they had failed to exhaust administrative remedies through contested case provisions of the Iowa Administrative Procedure Act (IAPA), Iowa Code chapter 17A. We reverse and remand.

For convenience all ten petitioners will be referred to jointly under the name of Allegre, who is one of the petitioners.

Iowa Code section 79.23 (1979), as amended by 1979 Iowa Acts chapter 2, §§ 42–43, provides in part:

Commencing July 1, 1977, when a state employee, *excluding an employee covered under a collective bargaining agreement which provides otherwise,* retires under the provisions of a retirement system in the state maintained in whole or in part by public contributions or payments, the number of accrued days of active and banked sick leave of the employee shall be credited to the employee. When an employee retires, is eligible and has applied for benefits ... the employee shall receive a cash payment for the employee's accumulated, unused sick leave in both the active and banked sick leave accounts *except when, in lieu of cash payment, payment is made for monthly premiums for health or life insurance or both as provided in a collective bargaining agreement* negotiated under chapter twenty (20) of the Code.... However, the total cash payment for accumulated, unused sick leave shall not exceed two thousand dollars and is payable upon retirement.... The claim for an employee of the state board of regents shall be filed with the state board of regents on forms provided by the board.

(Emphasis added.)

The Iowa State Board of Regents (Board) is a state agency under Iowa Code chapter 262. The Board oversees the University of Northern Iowa (UNI), and its employees are those of the Board for the purposes of this case.

The pleadings disclose the following. At its June 18–19, 1980, meeting, without any hearing involving petitioners, the Board decided that UNI be directed "not to pay any accumulated, unused sick leave upon retirement to members of the faculty collective bargaining unit of the University of Northern Iowa." Petitioners retired from their respective faculty positions after July 1, 1979. They were members of an "employee organization," Iowa Code section 20.3(4), and covered by a collective bargaining agreement with the Board of Regents. Each petitioner made application to UNI and the Board under section 79.23 requesting cash payment for his or her unused, accumulated sick leave. UNI denied payment, citing the Board's decision to not authorize payment to members of the collective bargaining unit who retired after June 30, 1979.

Petitioners brought a declaratory judgment action to determine whether they were entitled to benefits under section 79.-23. In *Allegre v. Iowa State Board of Regents,* 319 N.W.2d 206 (Iowa 1982) (*Allegre I*), we stated that the Board's determination to deny such benefits constituted "agency action" within the meaning of Iowa Code section 17A.2(9). We further held that the exclusive means of review of the agency's action was the judicial review procedure contained in Iowa Code section 17A.19.

Allegre then filed the present petition for judicial review in district court pursuant to section 17A.19(1). The Board filed a motion to dismiss the petition. In division III of the motion, the Board contended the controversy involved a "contested case" as defined in section 17A.2(2); that petitioners had failed to exhaust their administrative remedies through contested case provisions of the IAPA; and therefore, the district court was without subject matter jurisdiction to judicially review the Board's action.

The district court sustained the Board's motion for the reasons urged therein and dismissed the petition.

Petitioners appeal. They contend: 1) this controversy does not involve a "contested case" under the IAPA; and 2) that the agency action denying them benefits under section 79.23 was final pursuant to section 17A.19(1) and subject to judicial review by the district court. Accordingly, petitioners assert they had exhausted their administrative remedies, and the district court had subject matter jurisdiction to judicially review the Board's action in rejecting their claim.

I. *Characterization of controversy as "contested case" or "other agency ac-*

*tion."* Having determined in *Allegre I* that the Board of Regent's decision denying Allegre's request for payment of accumulated sick leave was "agency action"[1] and thus subject to the IAPA's judicial review provisions, we now are faced with the issue of characterizing the nature of such "agency action."

The IAPA divides administrative action into three categories: "rulemaking," adjudication (referred to as a "contested case"), and "other agency action." *Polk County v. Iowa State Appeal Board,* 330 N.W.2d 267, 276 (Iowa 1983). *See* Bonfield, *The Definition of Formal Agency Adjudication Under the Iowa Administrative Procedure Act,* 63 Iowa L.Rev. 285, 286–87 (1977). "Other agency action" is a residual category—if administrative action does not fall within the definition of "rulemaking" or "contested case," then it must be "other agency action." *Polk County,* 330 N.W.2d at 276–77.

The parties make no contentions that the Board's action should be construed as "rulemaking." Therefore, we need only consider whether this controversy should be reviewed as a "contested case" or "other agency action." "The importance of the distinction lies in the procedural due process which attaches to contested cases." *Id.* at 276.

■■■ Agency action falls within the general adjudication category when it determines the rights, duties and obligations of specific individuals as created by past transactions or occurrences. *Polk County,* 330 N.W.2d at 277. An agency proceeding is defined by statute to be a "contested case" if the constitution or a statute *requires* that those rights be determined by an agency after an opportunity for an evidentiary hearing. Iowa Code § 17A.2(2). "The evidentiary hearing required by section 17A.2(2) is 'an oral proceeding whose purpose is to determine disputed facts of

particular applicability known as adjudicative facts—the who, what, when, where, and why of particular individuals in specified circumstances.'" *Polk County,* 330 N.W.2d at 277 (quoting Bonfield, *Formal Agency Adjudication,* 63 Iowa L.Rev. at 294). If a hearing is not required, or the hearing required is not an evidentiary hearing, the adjudication will be categorized as "other agency action." *Polk County,* 330 N.W.2d at 277; *see also* Bonfield, *Formal Agency Adjudication,* 63 Iowa L.Rev. at 288. Our initial inquiry, therefore, must determine whether the Board of Regents is required by statute or constitution to grant petitioners an opportunity for an evidentiary hearing.

This is a paradoxical case in that the agency—Board of Regents—is arguing that it should be required by statute or constitution to provide a formal evidentiary hearing to petitioners, after having already denied petitioners' claim. The Board further contends that petitioners' failure to pursue such a hearing is evidence that petitioners have not exhausted their administrative remedies. Petitioners, on the other hand, the party typically asserting the right to an evidentiary hearing, do not seek an evidentiary hearing and have not objected to the Board's informal decision-making procedure. They seek only to pursue judicial review of the Board's decision which they contend was "final agency action." *See* Iowa Code § 17A.19(1).

A. *Statutory requirement.* The Board concedes there is no *express* statutory requirement to provide petitioners with an evidentiary hearing, nor a hearing of any kind, to adjudicate their claim for payment of accrued sick leave. See Iowa Code § 79.23 (state employee's credit for accrued sick leave); Iowa Code § 262.9 (powers and duties of State Board of Regents).

The Board argues, however, that these statutes when construed together *implied-*

---

1. Iowa Code § 17A.2(9) (*"Agency action"* includes the whole or a part of an agency rule or other statement of law or policy, order, decision, license, proceeding, investigation, sanction, relief, or the equivalent or a denial thereof, or a failure to act, or any other exercise of agency discretion or failure to do so, or the performance of any agency duty or the failure to do so.")

*ly* require an evidentiary hearing. Professor Bonfield comments on the theory of an implied statutory requirement as follows:

> [T]here is nothing in the "required by constitution or statute" language, in its legislative history, or in good policy, that indicates that the hearing requirement referred to must be *express*—that is, linguistically blunt on the face of the Constitution or the statute. The hearing requirement certainly may, therefore, be implied as well as express.... [T]he right to an evidentiary hearing may be found, for example, not only on the face of a statute but also in its legislative history, in implications drawn from its less than clear language, and from the linguistic or factual context in which it appears.

Bonfield, *Formal Agency Adjudication*, 63 Iowa L.Rev. at 312 (emphasis in original).

We fail to discern, however, any basis in the statute or its legislative history for finding that the State Board of Regents is impliedly required to grant petitioners a formal evidentiary hearing. We said in *Allegre I* that "[a]lthough not specifically mentioned, the *right to decide* if retiring employees are entitled to the benefits of section 79.23 is granted under that part of section 262.9 which authorizes the Board to 'perform all other acts necessary and proper for the execution of the powers and duties conferred upon it.' Section 262.-9(11)." *Allegre*, 319 N.W.2d at 208 (emphasis added). We conclude today that section 262.9(11) does not impliedly require the Board to make such a decision after a formal evidentiary hearing.

B. *Constitutional requirement.* We must next determine whether the Constitution, through the due process clause of the fourteenth amendment, requires the legal rights, duties, or privileges of petitioners to be determined by the Board only after an opportunity for an evidentiary hearing. Professor Bonfield has written at length on the question of when the Constitution requires an evidentiary hearing:

In general, procedural due process demands that whenever a state agency determines the legal rights, privileges, or duties of a specific party based upon that party's particular facts and circumstances, the state agency is bound to provide an opportunity for an evidentiary hearing. Stated differently, a state must *usually* provide an individual with an opportunity for a hearing of some sort when it takes action of *particular applicability*, defining a person's rights, on the basis of adjudicative facts. As noted earlier, adjudicative facts are individualized facts concerning the circumstances of the specific party—the facts of the particular case. "Adjudicative facts are the facts about the parties and their activities, businesses, and properties.... [T]hey usually answer the questions of who did what, where, when, how, why, with what motive or intent; adjudicative facts are roughly the kind of facts that go to a jury in a jury case." ... "Legislative facts do not relate to particular parties; they are generalized facts which apply more broadly and may, as Justice Holmes once phrased it, serve as a ground for laying down a rule of law."

Bonfield, *Formal Agency Adjudication*, 63 Iowa L.Rev. at 323 (footnotes omitted) (emphasis in original).

Professor Bonfield then lists and discusses several exceptions to this general principle, including (1) interests of an individual that cannot be characterized as either "life, liberty, and property" within the meaning of the due process clause of the fourteenth amendment because no entitlement can be established; (2) absence of relevant disputed facts; (3) emergency agency action; and (4) use of inspections, examinations, and testing to determine relevant facts. *Id.* at 325–35.

The only exception potentially applicable to this case is the exception concerning "absence of relevant disputed facts." In commenting on this exception, Professor Bonfield states:

> The second exception to the general notion that agencies are required by consti-

tution to provide an opportunity for an evidentiary hearing when they determine the legal rights of a particular party on the basis of that party's peculiar facts, is the situation in which there is no relevant factual dispute between the agency and the party. The whole function of the required *evidentiary* hearing is ... to find adjudicatory facts in the best way available—through the mechanism of an oral adversary hearing. When there are *no* relevant adjudicative facts in dispute, therefore, there is no more need for a hearing as a matter of due process than there is as a matter of statutory requirement. Obviously, neither the Constitution nor a statute should be read to require a wholly useless act. [*See Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977)]

. . . .

A hearing is not required by constitution in an agency adjudication when there is no material issue of fact that is disputed by the parties.

*Id.* at 330–31 (underlined emphasis added) (italicized emphasis in original).

We are convinced this case falls clearly within this exception. We can discern no dispute between the parties over any relevant or material adjudicative fact. The only relevant facts in this case concern petitioners' status as state employees and parties to a collective bargaining agreement, the existence of a collective bargaining agreement, and its contractual terms therein—all of which are not disputed. The parties' controversy appears to present purely a legal question—the Board's interpretation of Iowa Code section 79.23, in conjunction with petitioners' collective bargaining agreement, to determine whether the collective bargaining agreement "provides otherwise" from the statute so as to preclude petitioners from receiving payment for their "accumulated, unused sick leave" in an amount not to exceed $2,000. Iowa Code § 79.23. To require an eviden-

tiary hearing in the present case would be to "require a wholly useless act."

■ Having found no statutory or constitutional requirement for an evidentiary hearing, we conclude the present controversy does not come within the "contested case" definition of Iowa Code section 17A.2(2) and is therefore to be denominated as "other agency action." [2] The practical result of this characterization is that the "contested case" procedural requirements of sections 17A.10–.17 and .19 are not applicable. *Polk County*, 330 N.W.2d at 277. Therefore, the Board is subject only to those procedural rules which it may voluntarily adopt, the procedural requirements of its enabling legislation (Iowa Code chapter 262), and general constitutional and statutory requirements that agencies act "reasonably." *Id.*

II. *Exhaustion of administrative remedies.* The Board's assertion of petitioners' failure to exhaust their administrative remedies rests entirely on a finding that an evidentiary hearing is *required* in this case and that petitioners have failed to pursue such a hearing—and potential remedy. We have consistently stated that the exhaustion rule does not prevent judicial review unless (1) an administrative remedy exists for the claimed wrong, and (2) the statutes expressly or impliedly require that remedy to be exhausted before resort to the courts. *Leaseamerica Corp. v. Iowa Dept. of Revenue*, 333 N.W.2d 847, 849 (Iowa 1983). *But cf. Continental Telephone Co. v. Colton*, 348 N.W.2d 623 (Iowa 1984) (in regard to the second prong which is not relevant for purposes of this case, we held in *Colton* that it is the intent of section 17A.19(1) that exhaustion of all adequate administrative remedies is *required* before seeking judicial review of agency action unless other statutory provisions in an agency's enabling legislation expressly or impliedly provide that exhaustion of all adequate administrative

---

**2.** If for some reason additional evidence becomes necessary in judicial review of this "other agency action," we note that Iowa Code section 17A.19(7) provides in part: "In proceedings for judicial review of agency action (other than a contested case) a court may hear and consider such evidence as it deems appropriate."

remedies is not required). Having found that an evidentiary hearing is not required here, we perceive no other administrative remedies that petitioners might pursue.

We therefore hold that the Board's denial of petitioners' claims for accumulated, unused sick leave amounted to "final agency action," that petitioners have exhausted all administrative remedies provided by the agency, Board of Regents, and, therefore, petitioners are entitled to judicial review of such "final agency action" pursuant to Iowa Code section 17A.19(1).

In accordance with this holding, we reverse the district court's sustention of the Board's motion to dismiss and remand the case for resolution of Allegre's petition for judicial review on its merits.

REVERSED AND REMANDED.