**OFFICE OF CONSUMER ADVOCATE, Appellee,**

v.

**IOWA STATE COMMERCE COMMISSION, Respondent,**

**United Telephone Company of Iowa, Intervenor–Appellant.**

**No. 89–996.**

Supreme Court of Iowa.

Jan. 23, 1991.

B.C. Clayton and Jeffrey K. Rosencrants of Diehl, Clayton & Cleverly, Newton, and

Joseph P. Cowin, Overland Park, Kan., for intervenor-appellant United Telephone.

James R. Maret, Consumer Advocate, and Alexis K. Wodtke, Des Moines, for appellee Office of Consumer Advocate.

Susan Allender and Allan Kniep, Des Moines, for respondent Iowa State Commerce Comm'n, now the Iowa Utilities Bd.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, NEUMAN, and SNELL, JJ.

NEUMAN, Justice.

This appeal examines the distinction drawn between general and non-general utility rate increases and the hearing requirements applicable to each. The controversy stems from proposed increases in charges for telephone operator service and directory assistance. Although the Utilities Board concluded without hearing that the increases were reasonable, the district court decided on judicial review that making such a factual determination on the present record without an opportunity for evidentiary hearing violated the objector's constitutional rights to due process. We agree and remand the case to the agency for further proceedings.

■ I. *Scope of review.* In proceedings like this one that are brought under the Iowa Administrative Procedure Act, the district court functions in an appellate capacity to correct legal error committed by the agency. Iowa Code § 17A.19(8) (1989). On appeal, we apply the standards of section 17A.19(8) to assess whether our conclusions coincide with those reached by the district court. *Northwestern Bell Tel. Co. v. Iowa State Commerce Comm'n*, 359 N.W.2d 491, 495 (Iowa 1984). Our review is ordinarily confined to determining whether the district court correctly applied the law. *Iverson Constr., Inc. v. Department of Employment Servs.*, 449 N.W.2d 356, 358–59 (Iowa 1989). When constitutional issues are raised, however, we are obliged to make an independent evaluation of the totality of the evidence; our review

becomes de novo. *Iowa–Illinois Gas & Elec. Co. v. Iowa State Commerce Comm'n*, 412 N.W.2d 600, 604 (Iowa 1987).

II. *Background facts and proceedings.* In December 1985, United Telephone Company of Iowa (United) filed with the Iowa State Commerce Commission (now known as the Iowa Utilities Board) an application to increase its directory assistance charges from 25¢ to 75¢ and to create new operator service charges ranging from 75¢ to $2.75 effective January 5, 1986. Accompanying the application was the affidavit of a United official charged with the responsibility for rates and tariffs. His sworn testimony stated that the proposed tariffs were designed to partially offset increased expense United would incur as a result of a change in its contract with Northwestern Bell. The application also included a table of projected revenues and expenses comparing the current and revised agreement. Ratepayers were notified by letter of the proposed increase and the opportunity to file written objections with the Utilities Board.

A number of objections were received, including one filed by the Office of Consumer Advocate (OCA). OCA contended that the proposed increase was unreasonable and unjust. It asserted that United had failed to supply evidence needed to determine the reasonableness of the rate increase. It also cited factors which led it to believe that United's revenue projections were underestimated while its anticipated expenses were overstated, thereby rendering questionable the utility's claim that the change was essentially revenue neutral. OCA asked that the application be dismissed or, in the alternative, docketed for further investigation.

United disputed OCA's objection on two grounds. First, it argued that both Iowa Code section 476.6(7) and corresponding administrative regulations contemplate ratemaking without evidentiary hearing when the change involves specific services subject to cost increases rather than a general rate increase.[1] Second, while conceding

1. Iowa Code § 476.6(7) states in pertinent part:

*Hearing Set.* After the filing of an application for new or changed rates, charges, schedules,

that its revenue and expense projections were based on estimates rather than empirical studies, United refuted OCA's charge of unreasonableness by alleging that United would suffer a loss even if the increased rates were approved.

At this point the proceedings took an unusual turn. A memo prepared by Utilities Board staff suggested some inaccuracy in United's figures warranting reduction in the proposed increase. It also noted United's willingness to negotiate with staff on the reduction and recommended that the tariff be refiled on that basis. Over OCA's renewed objection that it had been denied hearing on the reasonableness of either the original or amended tariff, the Utilities Board authorized the increase. Shortly thereafter, however, a proposed rate increase by United on an unrelated service prompted the Utilities Board to question whether these proposed tariffs represented undesirable "piecemeal" ratemaking or non-general ratemaking contemplated by section 476.6(6).[2] It suspended United's rate increase and invited briefs from the parties solely on that legal question.

Following briefing, the Utilities Board concluded that it had authority to consider specific as well as general rate increases. The board cautioned, however, that it would exercise this authority only "rarely" in "narrow cases" where four specific conditions are met:

1. There is no change proposed in the utility's basic rates (its rates for the most common and significant services it offers).

2. The proposed increase will have a minimal or insignificant effect on the utility's rate of return.

3. The proposal is initiated by a cost increase (or other change) which is largely beyond the utility's control and which is the result of a known and indisputable fact.

4. The Commission must be able to find that the specific changes will result in rates which satisfy all statutory requirements, including Iowa Code § 476.7.

Applying these standards to the conclusions drawn from its staff's examination of United's data, the Utilities Board expressed its satisfaction that the proposed rate increase (1) affected only a specific set of rates, (2) would not significantly increase United's earnings, and (3) resulted in rates that are reasonable and just.

OCA moved for rehearing on two grounds. First, it claimed that the United filing did not meet the four-factor test established by the Utilities Board. Second, and of importance to this appeal, OCA renewed its claim that the ratepayers would be harmed by the Utilities Board's refusal to allow OCA to cross-examine United's experts and tender opposing evidence be-

---

or regulations by a public utility subject to rate regulation, the board, prior to the expiration of thirty days after the filing date, shall docket the case as a formal proceeding and set the case for hearing *unless the new or changed rates, charges, schedules, or regulations are approved by the board.* (Emphasis added.) The Iowa Administrative Code provides:

*Applications pursuant to Iowa Code section 476.6, that are not general rate increase applications.* At the time a rate-regulated public utility, other than a rural electric cooperative, files for new or changed rates, charges, schedules or regulations except in conjunction with general rate increase applications, it shall submit the following:
 a. Any cost, revenue or economic data underlying the filing.
 b. An explanation of how the proposed tariff would affect the rates and service of the public utility.

 c. All testimony and exhibits in support of the filing attached to affidavits of the sponsoring witnesses.
250 Iowa Admin.Code 7.4(10) (1989).

2. That Code section provides:
*Facts and arguments submitted.* At the time a public utility subject to rate regulation files with the board an application for any new or changed rates, charges, schedules, or regulations, the public utility also shall submit factual evidence and written argument offered in support of the filing. *If the filing is an application for a general rate increase,* the utility shall also file affidavits containing testimonial evidence to be offered in support of the filing, although this requirement does not apply if the public utility is a rural electric cooperative.
Iowa Code § 476.6(6) (emphasis added).

fore determining whether United's proposal is just and reasonable.

The Utilities Board denied OCA's motion for rehearing, accusing the advocate of disregarding the agency's statutory authority to make such determinations without hearing. Given its staff analysis of United's projections, the agency saw no benefit to be gained by evidentiary hearing. It went on to hold that in order to generate a material issue of disputed fact, OCA must do more than merely protest the proposed increase; it must "identify what it believes to be the correct information."

OCA petitioned the district court for judicial review. The court agreed with the agency's contention that, by statute, not all ratemaking proceedings require an evidentiary hearing. It found, however, that OCA had raised material issues of disputed fact concerning the reasonableness of the revenue and expense projections upon which United based its filings. Because the agency was engaged in adjudicating the legal rights of United's customers, the court held, considerations of due process required that those customers be granted a meaningful hearing on the proposed rate change. It is from this ruling that United, as intervenor, has appealed.

III. *Appellate issues.* On appeal, United raises two issues. First, it asserts that the court's ruling rested on an issue of constitutional due process that was not preserved in the record before the agency. Second, it claims the court erred in ruling that OCA raised material fact issues which constitutionally necessitate an evidentiary hearing before the agency. We shall consider the arguments in turn.

■ A. *Preservation of constitutional claim.* United contends that OCA is barred from asserting a due process challenge to the Utilities Board's action because the issue was never raised before the agency. United claims, in fact, that the district court "raised this issue on its own." The record, however, does not bear out this assertion.

OCA claimed from the outset that United's customers were entitled to be heard on the proposed rate increase. The due pro-

cess implications of the Utilities Board's decision to dispense with hearing were not specifically raised by OCA, however, until its application for rehearing asked that the Board's summary action be reversed. In its application, OCA asserted that the reasonableness of United's revenue and expense projections could only be determined after a hearing "in which OCA is given an opportunity to present evidence and arguments." As authority for this proposition, OCA cited section 1 of the fourteenth amendment to the United States Constitution and article I, section 9 of the Iowa Constitution as well as several statutory hearing provisions.

The district court deemed OCA's pleading sufficient to raise the constitutional claim and preserve it for judicial review and, ultimately, appeal. We agree. Generally, our review is limited to questions considered by the agency. *General Tel. Co. v. Iowa State Commerce Comm'n,* 275 N.W.2d 364, 367 (Iowa 1979). Even issues of constitutional magnitude may be deemed waived on appeal if not raised before the administrative tribunal. *Bonds v. State,* 447 N.W.2d 135, 136 (Iowa 1989). However, an issue not raised in the initial pleading before the agency may be preserved for appeal if raised for the agency's consideration in a motion for rehearing. *Chicago & N.W. Transp. Co. v. Iowa Transp. Regulation Bd.,* 322 N.W.2d 273, 276 (Iowa 1982). This exception applies here because OCA raised its claim of procedural unfairness at the earliest possible opportunity. Both United and the Utilities Board were given the opportunity to address the issue in response to OCA's motion but did not do so.

■ Besides complaining of the alleged untimeliness of OCA's due process challenge, United also claims that the issue was not raised with sufficient precision to alert the agency to the error being claimed. United points to this court's historical dissatisfaction with litigants who "make a general reference to constitutional provisions in the district court and then seek to develop the argument here." *Klobnock v. Abbott,* 303 N.W.2d 149, 153 (Iowa 1981); *see*

*also Martin Bros. Co. v. Fritz*, 228 Iowa 482, 492, 292 N.W. 143, 147–48 (1940) (to preserve error, specific reference must be made to the constitutional clause relied upon). United argues that because OCA never made reference to alleged violation of the *due process* clause of the fourteenth amendment, its constitutional challenge was erroneously considered by the district court and has not been adequately preserved for appeal.

United's argument elevates form over substance. It is true that OCA never specifically mentioned the due process clause of the fourteenth amendment. United cannot seriously argue, however, that anything but procedural fairness was raised by OCA's fourteenth amendment claim and its repeated request for an evidentiary hearing. Clearly the other safeguards secured by the fourteenth amendment (citizenship, privileges and immunities, and equal protection) had no bearing on the case. We are persuaded that the agency was alerted to OCA's concern, and that the district court was correct when it found the issue adequately preserved. The assignment of error is without merit.

■ B. *Right to evidentiary hearing.* The central question on this appeal is whether OCA was entitled to an evidentiary hearing to urge its objections to United's proposed rate increase. We begin our analysis by noting that for purposes of the Iowa Administrative Procedure Act, a ratemaking proceeding is considered a "contested case" when "the legal rights, duties or privileges of a party are required by *Constitution* or *statute* to be determined by an agency after an opportunity for an evidentiary hearing." Iowa Code § 17A.2(2) (emphasis added); *Polk County v. Iowa State Appeal Bd.*, 330 N.W.2d 267, 277 (Iowa 1983). The parties do not dispute—and we assume for purposes of this appeal—that Iowa Code sections 476.6(6) and (7) *statutorily* permit the Utilities Board to order non-general rate increases without hearing. The parties are at odds, however, over whether a hearing is *constitutionally* mandated in the present case

notwithstanding the permissive language of the statute.

We note preliminarily that entitlement to an evidentiary hearing in the administrative realm ordinarily turns on the question of whether the issues at stake deal with adjudicative or legislative facts. *See generally* Bonfield, *The Definition of Formal Agency Adjudication Under the Iowa Administrative Procedure Act*, 63 Iowa L.Rev. 285, 323 (1977). The parties do not concern themselves with this distinction, however. They proceed directly to the question of whether OCA raised disputed issues of material fact requiring an evidentiary hearing for resolution. This court has previously ruled that "absence of relevant disputed facts" is one of the recognized exceptions to the constitutional hearing requirement. *Allegre v. Iowa State Bd. of Regents*, 349 N.W.2d 112, 115–16 (Iowa 1984); *accord Peoples Natural Gas Co. v. Iowa State Commerce Comm'n*, 382 N.W.2d 452, 456 (Iowa 1986). To require a hearing under such circumstance would be a "wholly useless act." *See Allegre*, 349 N.W.2d at 116 (quoting Bonfield, *Formal Agency Adjudication*, 63 Iowa L.Rev. at 330–31).

The district court concluded that OCA had raised at least three disputed issues of material fact relating to the reasonableness of the proposed rate increase. First, it noted that the terms of United's contract with Northwestern Bell were not documented, thus validating OCA's assertion that certain expenses might not reflect a direct pass through of costs but rather duplicate recovery of previously adjudicated rates. Second, because United did not furnish the source of projected directory assistance usage data and the corresponding revenue and expense predictions, no independent verification of the reliability of these figures could be made by the Utilities Board or challenged by OCA. Hence, OCA's claim that the numbers were inflated could not be disregarded. Third, the Utilities Board failed to furnish OCA with the calculations which led it to conclude that 60¢ per directory assistance call was just and reasonable.

The thrust of United's appeal is that these findings by the court merely reflect

the protests lodged by OCA. United argues that in order to meet the standard of "disputed material fact," OCA must come forward with contrary data of its own to refute United's calculations. Unless a contestant satisfies this threshold burden of tendering probative evidence, United argues, no genuine fact issues are generated and an evidentiary hearing becomes a "wholly useless act."

We agree that if a controversy centers solely on a dispute over controlling principles of law, an evidentiary hearing will be useless. That is the teaching of *Allegre* and *Peoples Natural Gas*. But in *Peoples* we also noted the fundamental distinction between disputes that are purely legal in nature and those in which an agency's decision is "arrived at as a result of disbelieving or failing to accept [a party's] version of the facts." *Peoples*, 382 N.W.2d at 456. Just such a dispute confronts us here.

The Utilities Board's decision rested solely on its belief in United's version of material facts. OCA was not privy to the data from which the disputed calculations were derived. Yet the agency denied OCA the opportunity to air its objections, and test the credibility of the disputed facts, in an adversary proceeding.

██ The district court rejected the argument now advanced by United with the simple observation that "the Commission cannot resolve fact questions on its own, or through its staff, without giving *all* the parties whose rights are being adjudicated an opportunity for an evidentiary hearing." We concur in this fundamental assessment of the due process required here. Speculation by both United and OCA regarding the economic impact of the proposed rate change leads us to conclude that OCA's objections were both material and related to facts genuinely in dispute. We affirm the district court's remand to the agency for further proceedings not inconsistent with this opinion.

AFFIRMED AND REMANDED.